Maxwell v. Jacksonville Loan & Imp. Co.—Syllabus.

GEORGE A. MAXWELL AND ANNIE J. MAXWELL, APPELLANTS, VS. THE JACKSONVILLE LOAN AND IMPROVEMENT COMPANY, APPELLEE.

1. The three months allowed for taking testimony in chancery causes by Rule 71 of the Rules of Circuit Court in suits in equity mean three calendar months.

2. Rule 71 of the Rules of Circuit Court in suits in equity which provides that three months and no more shall be allowed for taking of testimony after the cause is at issue, unless the judge shall, upon special cause shown by either party, enlarge the time * * *, allows three calendar months, after the cause is at issue for taking testimony by the parties, complainant and defendant, and in determining when said time has expired, the first day when the cause is at issue—the day of filing the replication—is to be excluded from the calculation.

3. Where a chancery cause is set down for a hearing by complainant on the bill, answer and replication, before the three months allowed by Rule 71 of the "Rules of the Circuit Court in Equity" for taking testimony have expired, and the parties complainant and defendant go to a hearing, and the cause is heard in that state of the pleadings without testimony, and there is no objection made by the defendants, the latter waives the right to take testimony, and in that case the answer of the defendants is evidence, in so far only as the allegations thereof are responsive to the bill.

4. Where an answer is confined to such facts as are necessarily required by the bill, and those inseparably connected with them, forming a part of one and the same transaction, the answer is responsive to the bill, as well when it discharges, as when it charges, the defendant.

5. Where it appears that A, a corporation, but one not operating under the building and loan association laws of Florida,

makes a contract with B, who owns one share of stock in
A, whereby A agrees on the 13th of February, 1893, to ad-
vance or loan B $7,300 at 7 per cent. interest per annum,
and that the interest should be calculated and added to
the principal, and the sum thus obtained should be divided
into 120 equal monthly payments of $82.13, due on the
11th day of each succeeding month, and that 10 per cent of
the whole sum, or $730 should be deducted as a bonus for
making the advance, and that, therefore, the real transac-
tion was an advance or loan of $6,570, at 10 per cent. in-
terest per annum; and that under the terms of the con-
tract a penalty of 10 per cent was to be imposed on B if
he made default in paying any one of these monthly in-
stallments, and that the installment should then also bear
interest at 7 per cent per annum; and that if B made
default in the payment of three consecutive monthly in-
stallments "then and in any such event the entire debt
shall ipso facto become due, payable and collectible."
with no provision in the contract for elimenting any part
of the unearned interest, contained in the installments,
thus precipitated to maturity, such a contract is unlawful
and usurious under the second clause of the second sec-
tion of Chapter 4022, laws of 1891, which makes unlawful
and usurious "any contract, contrivance or device what-
ever, whereby the debtor is required or obligated to pay
a greater sum than the actual principal sum received, to-
gether with interest at the rate of ten per centum per an-
num."

This case was decided by Division A.

Appeal from the Circuit Court for Duval County.

A. W. Cockrell & Son and J. S. Maxwell, for Appel-
lants.

W. B. Young and J. W. Archibald, for Appellee.

## STATEMENT.

On the twentieth day of January, A. D. 1894, the complainant (appellee) filed its bill of complaint in the Circuit Court of Duval county, Florida, in chancery, as follows, omitting the formal parts: "The Jacksonville Loan and Improvement Company, a corporation duly incorporated and existing under the laws of the State of Florida, and having its principal place of business in the city of Jacksonville, in said county of Duval, brings this, its bill, against George A. Maxwell and his wife, Annie J. Maxwell, The Florida Hardware Company, a corporation created and existing under the laws of Florida, and having its principal place of business in the city of Jacksonville, county of Duval and State of Florida, Quincy E. Brown and John Lloyd, all of whom reside in said Duval county, Florida, and thereupon your orator complains and says:

1st. That the said defendant, George A. Maxwell, was the holder and owner of one share of stock in the said corporation.

2nd. That on the 17th day of October, 1892, the said defendant, George A. Maxwell, made application to your orator to advance to him the sum of seven thousand five hundred dollars, gross, on the said one share of stock standing in his name, the net amount of such advance to be used by him in building four houses upon the property hereinafter described, and to pay off a mortgage of two thousand five hundred dollars then held upon the said property by one Henry B. Dill.

3rd. That the said application was approved by the committee for the sum of seven thousand three hundred dollars, and the said sum of seven thousand three hundred dollars was advanced to the said defendant, George

A. Maxwell, all of which will more fully appear from a copy of the said application hereto attached, marked Exhibit "A," and prayed to be taken as a part of this bill, the original of which will be produced as this Honorable Court shall direct.

4th. That thereupon, in consideration of the said sum of seven thousand three hundred dollars so advanced to the said Maxwell, the said George A. Maxwell and his wife, Annie J. Maxwell, made, executed and delivered to your orator a warranty deed by which they conveyed to your orator, its successors and assigns, to its own proper use, benefit and behoof forever,. all the following pieces, parcels, lots or tracts of land situate, lying and being in the county of Duval and State of Florida, and known and described as follows: Lots twenty-nine (29), thirty (30), thirty-one (31), the. north half of lot thirty-four (34), lots thirty-five (35) and thirty-six (36) of the Supplement to Riverside, according to plat recorded in Book "C," page 434, Duval county record of deeds, and being the same property conveyed to George A. Maxwell by Brook C. White by deed dated April 10th, 1887, and recorded in Book "B. F.", page 427, Duval county record of deeds, except the southerly fifty (50) by one hundred and fifteen (115) feet of said lot thirty-four (34) conveyed to C. S. Kenyon by deed dated March 28th, 1892, and recorded in Book "80," page 277, Duval county records, which said deed to your orator from said defendants is hereto attached, marked Exhibit "B", and prayed to be taken as part of this bill.

5th. That upon the same day, as a part of said transaction, the said George A. Maxwell, and his wife, made, executed and delivered to your orator an agreement by which, for value received, they promised to pay to your orator the sum of seven thousand three hundred dollars, with in-

terest from the date thereof at the rate of seven per cent. per annum, according to the by-laws of your orator, as rent for the said land and premises, which said rent defendants agreed to pay in one hundred and twenty months from the date of said agreement in equal monthly installments of eighty-two and 13-100 dollars per month to be paid on the 11th day in each and every month until the whole was paid. The said agreement also provided that each monthly installment unpaid should bear interest at the rate of seven per cent. per annum until paid, and in default should be subject, in addition, to such fines or penalty as the by-laws of your orator may prescribe. That it was further provided in and by said agreement that the defendants shall hold said premises as the tenants of said company, and pay as part of said rent, but in addition to the above sum, all taxes of every nature, kind and description, water rents, and all levies or assessments made on said property by any State, county, municipal or other authority, and to pay for all repairs, and to make or cause to be made said repairs, and to keep said property insured for the benefit of your orator in any company designated by it, and to pay all premiums of insurance. That they further agreed therein to pay to your orator all monthly or other dues in the shape of installments, interest, premiums for insurance, fines and arrearages, that might be due to said company, or that might be paid out by said company for him, according to the true intent and meaning of the by-laws of said company, and perform every duty imposed by said by-laws, and to do everything and pay every charge therein required, as if the same was therein set forth and specifically mentioned, and to pay all costs and expenses, including reasonable attorneys' fees that said company might be put

to in any proceeding that might be instituted to enforce any claim of duty against them. That it was further provided in said agreement that the said defendant should give additional security when the same might be demanded by the board of directors of your orator; and it was further agreed by the defendant that should default be made, for three consecutive months in the payment of the monthly installments aforesaid, or in keeping any of the covenants contained in the said agreement, then the entire balance due upon the sum aforesaid shall at once become due, payable and collectible; and after the sale of the property held by the company the proceeds to be applied—first, to the payment of all expenses, and the balance upon the debt aforesaid; and the said defendant agreed to pay any deficiency remaining unpaid.

It was further provided in said agreement that in case of default in the payment of any sum, or the performance of any duty therein undertaken or imposed by the by-laws of your orator, that the said tenancy should cease, and that the defendant should, at once, deliver to your orator full, peaceable and quiet possession of said premises, and any and all improvements thereon, and all that might be put thereon while in the possession of said defendants; all of which will more fully appear from the said agreement, a copy of which is hereto attached, marked Exhibit "C," and prayed to be taken as a part of this bill, the original of which will be produced as this Honorable Court shall direct.

6th. That a copy of the by-laws of your orator is herewith filed marked Exhibit "D", and prayed to be taken as part of this bill, with leave to refer to same as often as may be necessary.

7th. That default has been made for more than three

months in paying the said installments, and the said de
fendant has broken the said covenants in said agreement
by failure to pay the insurance and taxes and assessments
upon said property, and that, under the terms of the said
agreement, the said defendants have forfeited their inter-
est in said property, and their right to the possession
thereof.

8th.   That there is now due to your orator, on account
of the unpaid installments provided for in said agreement,
and on account of taxes paid by your orator, and insu-
rance premiums paid by your orator, and fines due to
your orator under the by-laws, a large sum of money due
and unpaid to your orator, to-wit:   The sum of seven
thousand seven hundred and 12-100 dollars.

9th.   That the said defendant, George A. Maxwell, has
no other property in the State of Florida subject to levy
and sale under execution out of which your orator can
collect any deficiency that might remain after the sale of
said property.

10th.   That the tenements upon said premises are leas-
ed to tenants, and the said defendant, George A. Maxwell,
is in receipt of the rents therefrom.

11th.   That the Florida Hardware Company, a corpora-
tion and existing under the laws of Florida, and having
its principal place of business in the city of Jacksonville,
county of Duval, and State of Florida, claims to have a
lien upon said property, but your orator avers that if it
has any such lien it is subordinate to the lien of your or-
ator.

12th.   That Quincey E. Brown who resides in said Duval
county, claims to have a lien on said lots thirty and thir-
ty-one, but your orator avers that if he has any such lien
it is subordinate to the lien of your orator.

13th. That John Lloyd, who resides in said Duval county, claims to have some interest in said property, but your orator avers that if he has any such interest it is subordinate to the lien of your orator.

To the end therefore, that the said defendants may, if they can, show why your orator should not have the relief hereby prayed, and may, upon their several and respective corporal oaths, and according to the best and utmost of their several respective knowledge, information, remembrance and belief, full, true, direct and perfect answer make each of the several allegations hereinbefore numbered and set forth, and that an account may be taken of what is due your orator, under the terms of the said agerement, for principal, interest, fines and taxes and insurance premiums paid out by your orator, and that it may be ascertained what sum would be a reasonable fee to be paid to complainant's solicitors, and that the said defendants may be required to pay the same, and all costs, and in default thereof that the said premises may be sold, and the proceeds thereof applied to the payment of said sums, and that a decree over for any deficiency may be rendered against the said defendant, George A. Maxwell, and that a receiver may be appointed to take possession of the said premises pending this litigation, and collect the rents, to be applied to the payments of any decree which your orator may obtain herein, and that said defendants, and each of them, may be barred of all equity of redemption in and to the said premises, and that the purchaser may be let into possession thereof, and that your orator may have such other and further relief in the premises as the nature of his case may require, and to equity shall seem meet.

EXHIBIT "A."

Application for Advance. .

Jacksonville, Fla., October 17, 1892.

I hereby make application to the Jacksonville Loan and Improvement Company to advance me . $7,500.00, gross, on one share of stock standing in my name, the net amount of such advance to be used to pay off 2500 mtge and build four houses on the follownig described property: lots 29, 30, 31, N ½ of 34, 35, 36 in Brooklyn Extension, commonly called Riverside, situated on Cleveland, Date and Orange Sts. On No. 29 now stands a house insured for $1,500, and valued by me at not less than $2,000. Each lot is 100x125 ft., high and dry. The same being the property of myself and offered for sale at the sum of $. . . . .

GEO. A. MAXWELL,
by W. B. Clarkson, Agt.

We, the appraising committee, have examined the above described property, and recommend that the advance be made of $7,300.

JOHN CONNIFF,
PHILIP WALTER,
W. A. MacDUFF.

Jacksonville, Fla., February 6, 1893.

I have examined the title to the within named property, and from said examination believe the title to be good, subject to the mortgage to H. B. Dill for 2500 and Int.

J. W. ARCHIBALD,
Attorney The Jacksonville Loan and Improvement Co.

27 S. C.

Jacksonville, Fla., February 17th, 1893.
Secretary The Jacksonville Loan and Improvement Company:

Issue warrant for net amount of within application.

JOSEPH H. DURKEE, President.

Then follows Exhibit "B," which is a warranty deed from George A. Maxwell and his wife to said Jacksonville Loan and Improvement Company, dated the 13th day of February, A. D. 1893, in consideration of the recited sum of seven thousand three hundred dollars, conveying the property above described in the bill, which deed was duly signed, sealed, witnessed, delivered, acknowledged for record and recorded in Book 84, page 624, in the public records of Duval county, Florida.

The following Exhibit "C," to-wit:

## EXHIBIT "C."

For value received, I promise to pay to the Jacksonville Loan and Improvement Company, a corporation under the laws of the State of Florida, the sum of seven thousand three hundred dollars, with interest from date at the rate of seven per cent. per annum, according to the by-laws of said company, as rent for the land and premises situated in the county of Duval, State of Florida, lots twenty-nine (29), thirty (30), thirty-one (31), the north half of lot thirty-four (34), lots thirty-five (35), and thirty-six (36), of the supplement to Riverside, according to plat recorded in Book "C," page 434, Duval county records of deeds, and more particularly described in a deed dated February thirteenth, 1893, from George A. Maxwell and Annie J. Maxwell, his wife, to the Jacksonville Loan

and Improvement Company, which said rent I agree to pay in one hundred and twenty months, from the date hereof, in equal monthly installments of eighty-two and 13-100 dollars per month, on the eleventh in each and every month until the whole is paid.

Each monthly installment unpaid shall bear interest at the rate of seven per cent. per annum until paid, and any default shall be subject in addition to such fine or penalty as the by-laws may prescribe. I further agree to hold said premises as the tenant of the company, and to pay as part of said rent, but, in addition to the above sum, all taxes of every nature, kind or description, water rents, and all levies or assessments that may be made on said property by any State, county or municipal, or other authority, to pay for all repairs that may be deemed necessary by said company or its board of directors, and to make, or cause to be made at my expense, said repairs whenever notified so to do by said board, and to keep said property insured for the benefit of said company, in any company that may designated by it, and to pay all premiums of insurance. I further agree to pay to said company all monthly or other dues, in the shape of installments, interest, premiums for insurance, fines and arearages, that may be due to said company, or that may be paid out by said company for me, according to the true intent and meaning of the by-laws of said company, and to perform every duty imposed upon me by said by-laws, and to do everything and to pay every charge therein required as if the same was herein set forth and specifically mentioned, and to pay all costs and expenses, including reasonable attorney's fees, that said company may be put to in any proceeding that may be instituted to enforce any claim of duty against me.

I further agree to give additional security, when the

same may be demanded by said board of directors. I further agree that should I make default for three consecutive months in the payment of the monthly installments aforesaid, or in keeping any of the covenants contained herein, then the entire balance due upon the sum aforesaid shall at once become due, payable and collectible; and after the sale of the property held by the company the proceeds shall be applied—first, to the payment of all expenses, and the balance upon the debt aforesaid, and I shall be bound and do hereby agree to pay any deficiency remaining unpaid.

I further agree that upon default in the payment of any sum, or the performance of any duty herein undertaken or imposed by said by-laws, or required by any regulation that may be adopted by said company, or its proper officers, in furtherance of the purposes of said company, to be determined by it, from henceforth said tenancy shall cease, and I will, or in case of my death, my heirs, executors, and administrators, shall at once deliver to said company full, peaceable and quiet possession of said premises, and any and all improvements, including fixtures thereon, and all that may be put thereon while in my possession.

Upon failure to surrender, said company shall have full and ample right to proceed to obtain possession of the same in any manner provided by law against a tenant in arrears or holding over, or in any other legal way, and sell, convey and dispose of the same as provided by its by-laws. I further agree to give notice to all builders, mechanics and material men before building or furnishing any material for the repair or improvement of said promises that said company holds the title to the premises. I also agree that any alteration or amendment of said by-

laws shall not affect the validity of this obligation, and that I will pay any sum or sums of money, and discharge any obligation that may be demanded or required by said amended by-laws, and this obligation shall be held and construed to be binding under the same, and in conformity therewith.

In Testimony Whereof, I have hereunto set my hand and seal this thirteenth day of February, 1893.

GEORGE A. MAXWELL, (Seal.)

ANNIE J. MAXWELL, (Seal.)

Executed in presence of

C. N. MAXWELL,

C. S. BUSHNELL.

For and in consideration of the sum of five dollars, to me in hand paid by the Jacksonville Loan and Improvement Company, the receipt whereof is hereby acknowledged, and other valuable considerations me thereto moving, I do hereby transfer, assign and set over to the said company, one share of stock in said company as collateral security for the fulfillment of the within obligation, dated February .., 1893, for seven thousand three hundred no-100 dollars. I further agree and bind myself to pay said company the balance due upon said stock, to-wit: One dollar per share, in monthly installments, according to the by-laws of said company. I further agree that said stock may be disposed of according to the by-laws of said company, waiving all notice and time, and any right as to the place of sale, or other right as to the time, place and manner of disposing of the same, to which I may be entitled under any law.

In witness whereof, I have hereunto set my hand and

seal, this thirteenth day of February, A. D. 1893.

                    GEORGE A. MAXWELL, (Seal.)

Executed in presence of

          C. S. BUSHNELL,

          C. W. MAXWELL.

J. L. & I. Co.

          vs.          EXHIBIT NO. 1.

Maxwell.

Filed in evidence before me this 2nd day of August, A. D. 1898, marked Exhibit No. 1.

                    CHAS. S. ADAMS,

                         Special Master.

Then follows Exhibit "D" to the bill, the by-laws of said Jacksonville Loan and Improvement Company, which it is unnecessary to insert as the substance thereof pertinent to the consideration of the case is contained in the bill, answer and exhibits.

On the 1st day of December, 1897, the defendants George A. Maxwell and Annie J. Maxwell, his wife, filed their joint answer, in words and figures following, omitting the formal parts:

1. The complainant is a corporation incorporated and existing under and by virtue of an act of the legislature of Florida entitled "An Act to provide for the creation of corporations and to prescribe their general powers and liabilities," approved August 8th, 1868, and the acts amendatory thereto, the articles of incorporation of said complainant being duly filed in the office of the clerk of the Circuit Court of Duval county, Florida, on May 11th, 1889; and these defendants say it is true that the defendant George A. Maxwell was the holder and owner of one share of stock in said corporation.

2. These defendants admit the truth of the allegations contained in the 2nd paragraph of said bill.

3. These defendants admit, in response to the allegations of the 3rd paragraph of said bill, that said application for a loan, so alleged to have been made in paragraph 2 ,was approved for the sum of seven thousand three hundred dollars; but these defendants deny that said sum of $7,300.00 was advanced or paid, in pursuance of said application and approved, or otherwise advanced or paid, to said defendant George A. Maxwell. . On the conratry thereof, these defendants aver that said complainant has paid or advanced no sum of money whatever to said defendant, George A. Maxwell; but these defendants allege, upon information and belief. that under said application and approval, said complainant paid out to divers persons divers times between the 13th day of February, 1893, and the 30th day of October, 1893, for the use and benefit of said defendant, George A. Maxwell, certain sums of money, the exact amount of which these defendants have been unable to ascertain, but amounting, as near as these defendants have been able to ascertain, in the aggregate to between $5,800.00 and $6,500.00. These sums were so paid out to divers  persons, except the  sum of  to-wit: $2,334.43 so paid to said mortgagee, Henry B. Dill, on the approval of one W. A. MacDuff, who was then and there the agent of the complainant, and in no wise the agent or representative of these defendants.    And further answering said paragraph 3, these defendants aver the truth to be, upon information and belief. that said complainant deducted and  retained  out of  said sum  of $7,300.00 so agreed to be advanced, the sum of 10 per cent. thereof, to-wit:  $730.00, which sum the  complainant claimed as a commission or discount, under the complain-

ant's construction of a provision of the by-laws of said complainant, as a fixed premium or bonus for said loan or advance, a copy of which said by-laws is by said complainant made a part of its bill, as exhibit D.

4. And these defendants, answering the fourth paragraph of said bill, admit that they executed and delivered to complainant a certain paper in writing purporting to be a warranty deed, and purporting to be for and in consideration of the said sum of $7,300.00, so alleged to have been advanced to the said George A. Maxwell, to convey to said complainant in fee simple the property set forth and described in said paper in writing, the original or which is attached to complainant's bill as exhibit B; but these defendants deny that said sum of $7,300.00 was then or thereafter advanced to said Maxwell, as alleged, nor was any advance made or sum loaned other than as set forth in paragraph 3 of this answer. And these defendants, further answering said paragraph 4, allege that said application for an advance of money (a copy of which is attached to the bill as exhibit A), said instrument in writing purporting to be a warranty deed (the original of which is attached to said bill as exhibit B), the agreement in writing made by these defendants (a copy of which is attached to the bill as exhibit C), and a certain paper in writing purporting to be a bond for title executed by said complainant to said defendant, George A. Maxwell, recorded in Book 84, folio 628, of the public records of Duval county, Florida, the original of which is hereto attached as part hereof as exhibit A—are all part and parcel of one and the same transaction; and these defendants aver, upon information and belief, that the effect of said various instruments in writing, in contemplation of law, is the same as

though these defendants had made and executed a bond and mortgage to said complainant; and these defendants aver upon information and belief, that the legal title to said property described in said paragraph 4 of said bill, and in said various instruments in writing above referred to, is in said defendant George A. Maxwell, and that said complainant has only a lien on said property for whatever sum or sums of money may on an accounting and ascertainment of the amount thereof be adjudged to be due it.

5.   These defendants, further answering said bill, admit that they made, executed and delivered to complainant an agreement as alleged in paragraph 5 of said bill; but these defendants aver that said sum of $7,300.00 so agreed to be paid by said defendants was not in fact advanced or loaned, nor was the sum, so to be repaid, rent for said premises, but was money alleged in paragraph 2 of said bill to have been advanced to said defendant, George A. Maxwell, said premises being hypothecated as security for the repayment thereof, which said sum was not advanced, as these defendants aver, nor was any sum or sums in fact advanced other than as set forth in paragraph 3 of this answer; and these defendants further aver upon information and belief, that said monthly installment of $82.13, so agreed to be paid said corporation, was in fact made up of a certain amount of the principal sum so claimed to have been loaned, to-wit: $60.84, and a certain amount of interest, to-wit; $21.29.   And these defendants, further answering paragraph 5, say that at the time they entered into said agreement they intended to in all respects comply therewith and to carry out the terms of the same, and that they were not aware that the

said agreement was in anywise fraudulent, corrupt, illegal or usurious, or that usury was inherent therein. That, upon this suit being instituted they were and are advised by counsel that said agreement is fraudulent, corrupt, illegal and usurious, in that by said agreement they have become "obligated to pay a greater sum than the actual principal sum received, together with interest at the rate of ten per centum per annum," as more particularly set forth hereafter.

6. These defendants aver that under and by the terms of said agreement, and under the by-laws of said corporation, which are a part of said agreement, said corporation sought to, and upon information and belief these defendants aver it did, retain out of said sum of $7,300.00, so alleged to have been advanced to the defendant, George A. Maxwell, the sum of 10 · per cent thereof, to-wit: $730.00 as a commission, discount, premium or bonus, making the amount to be actually paid over or advanced, the sum of $6,570.00; and interest was charged, under said agreement, on said gross amount of $7,300.00 at the rate of 7 per cent per annum from date of said agreement. And these defendants aver, as they have been advised, that, in the event of default within a year for three consecutive months in the payment of said monthly dues or installments, they became obligated, under said agreement, and said corporation is seeking to require them to pay more than the "actual principal sum received, together with interest at the rate of ten per centum per annum" for the time said defendants have had the use and benefit of the money actually received.

7. And these defendants further say, as they have been advised, that under and by the terms of said agreement, in the event these defendants defaulted in the payment

of monthly dues or installments, they became obligated to pay and said corporation, as these defendants believe, is now seeking to require them to pay, in addition to interest at the rate of 7 per cent per annum on said alleged principal sum of $7,300.00, interest at the rate of 7 per cent per annum upon each and every unpaid monthly installment of $82.13—which said monthly installment is made up of $60.84 principal and $21.29 interest; and thereby said defendants obligated themselves, as they have been advised, and said corporation is now seeking, as these defendants are informed and believe, to require these defendants to pay more than the "actual principal sum received, together with interest at the rate of ten per centum per annum" for the time said defendants have had the use and benefit of the money actually received.

8. And these defendants further say, as they have been advised, that under and by the terms of said agreement, in the event of default on the part of said defendants in said monthly payments or installments, said defendants obligated themselves to pay, and upon information and belief they allege said corporation is now seeking 'to require them to pay, in addition to 7 per cent per annum on said alleged principal sum of $7,300.00, and in addition to interest at the rate of 7 per cent per annum upon each monthly installment of $82.13 remaining unpaid, a fine of 10 per cent of the sum defendants are in arrears in the payment of said monthly installments for every month said arrears are unpaid; and thereby these defendants obligated themselves, as they have been advised, and, as they have been informed and believe and so charge the truth to be, the said corporation is now seeking to require them to pay more than the "actual principal sum received, together with interest at the rate of ten per centum per

annum" for the time said defendants have had the use and benefit of the money actually received.

9. And these defendants further say that in the event said defendants defaulted in the payment of the said monthly installment of $82.13, under and by the terms of said agreement, said defendants were obligated, as they are advised, for the forbearance on the part of said corporation to enforce the collection thereof, to pay interest thereon from date said installment became due at the rate of 7 per cent per annum until paid, and, in addition thereto, the sum of 10 per cent thereof for every month said installment is unpaid; and thereby, these defendants say, said contract became, and was and is usurious.

10. And these defendants further say, as they are advised and believe, and upon such information and belief state the fact to be, that the terms, provisions and conditions of said transaction so expressed in the said several instruments of writing, set up in the bill and this answer, as parts of one transaction, were devices and contrivances whereby, and under cover whereof, under the facts herein set up, a larger amount of interest in fact than is allowed by the statute for the loan or forbearance of money was exacted of defendants, and herein sought to be enforced against these defendants. And these defendants say, as they are advised and believe, and upon such information and belief state the fact to be, that nothing is due complainant other than the principal sum so advanced or loaned to the defendant George A. Maxwell, of the exact amount of which these defendants are not advised.

11. And further answering, these defendants admit the 6th paragraph of said bill to be true.

12. And further answering, in response to the 7th paragraph of said bill, these defendants say that when the

application for a loan was approved for $7,300.00, as alleged in said bill, and for and in consideration of the fact that the said complainant corporation retained possession of and full control over the said funds so approved as a loan, it was agreed and understood by and between the said corporation and the defendant, G. A. Maxwell, and said understanding and agreement was for a time acted upon by said complainant, that out of the funds so retained in the possession of said corporation the monthly installments, as they became due, should be paid by said corporation, which sums, whatever they might in the aggregate amount to, were to be repaid to said corporation when said corporation was called upon to have a final settlement with the contractor who was then building the houses for the defendant, G. A. Maxwell. And these defendants further say that the defendant, G. A. Maxwell, during the month of July, or August, 1893, finding he could not, on account of the financial stringency then existing, get certain money he had depended upon, applied to one W. P. Gifford to borrow $1,000.00 for the purpose of paying back all money that may have been paid by said corporation under said understanding and agreement, and to enable said defendant to pay all taxes, charges by said contractor for extra work, insurance premiums, etc.; and said Gifford agreed to let said defendant have the sum of $1,000.00, provided the defendant could get the lot on which he then resided released from the lien thereon held by said corporation, and would mortgage the same to the said Gifford as security for said loan. Thereupon said G. A. Maxwell applied to said complainant for a release of said lot from the lien held by it; and, after some time elapsed, said G. A. Maxwell was notified by W. A. Bours, the secretary of said complainant, that

the board of directors refused to release said lot, but that they would increase the loan to said Maxwell to such a sum as would be sufficient to cover the accrued monthly installments, insurance premiums, charges for extra work done, etc., up to $1,000.00. Thereupon, the said Maxwell notified said Gifford that he did not wish to consummate said loan of $1,000.00, and rested quiet in the belief that the loan to him would be so increased, whenever it should be ascertained what amount was necessary to cover the monthly installments already accrued, insurance premiums, etc., up to $1,000.00; and said Maxwell expected the said loan to be so increased, although he knew the increase had not been made, and rested quietly in said belief until the latter part of December, 1893; wherefore these defendants say they are not in default a salleged in said bill.

13. And in answer to the 8th paragraph of said bill these defendants say they are not advised as to the amount due by them to said complainant, and demand strict proof thereof; that they are not advised as to any taxes or insurance premiums paid by said corporation, and demand strict proof thereof.

And further answering said paragraph, said defendants say that, in the early part of January, 1894, said defendant, G. A. Maxwell, through his brother, J. S. Maxwell, as his agent, requested that a statement of what said corporation claimed to be due from him to it be furnished him, in order that he might raise the amount so claimed, if possible, and pay off all said indebtedness; but said statement has never been furnished to either of these defendants, or to their agents, attorneys, or to any one acting for them or in their behalf; and these defendants have never been able to ascertain what amount they

should raise to pay off the claim of said corporation, nor do they now know the exact amount of the indebtedness due plaintiff.

14. And these defendants deny the allegations of the 9th paragraph of said bill.

15. These defendants admit the allegations of the 10th paragraph.

16. These defendants say they are not advised as to the truth or falsity of the allegations of the 11th paragraph, and demand proof thereof.

17. These defendants deny that Q. E. Brown has a lien, but admit he calims one.

18. These defendants deny the allegations of the 13th paragraph.

19. And these defendants, further answering the said bill, say they are not indebted, and were not indebted at any time, to the complainant in the sum of $7,722.12, as alleged in said bill; that no lien exists now or heretofore existed or was created upon the premises described in said bill, or is or was capable of being enforced thereon for the said sum; that on the contrary thereof, the indebtedness protected by a lien on said premises is largely less than the amount so claimed; that these defendants are not advised of the exact amount, though they have sought diligently to get the information, which has been loaned to, or paid out on account of, the defendant George A. Maxwell, constituting a lien on said premises; that prior to the institution of this suit, application was made to the complainant for a statement of the amount so advanced and so paid out; that this application was made so as to enable these defendants to raise the funds necessary to discharge the said indebtedness protected by the lien created by the transactions herein set forth; and that com-

plainant failed to furnish to the defendant the information so applied for, and failed to furnish to these defendants any information in the premises. And these defendants aver their willingness to have the sums so in fact advanced to, or paid out on account of the defendant, George A. Maxwell, ascertained upon a reference by this court, in that behalf, or as this court may deem proper; and that the principal of said several sums so ascertained be adjudicated and enforced as a lien on said premises.

And then follows the clause denying any and all manner of unlawful combination, etc., the signatures of counsel, and affidavit of both defendants as to truth of answer.

Exhibit A is as follows:

"EXHIBIT A.

"Upon the payment of an obligation for seven thousand three hundred dollars, with interest thereon from date at seven per cent. per annum, payable in one hundred and twenty months, in monthly installments of eighty-two and 13-100 dollars per month, and the further payment of all taxes, assessments, water rents, insurance, repairs, and other obligations contained in the contract, this day made and delivered by George A. Maxwell to the Jacksonville Loan and Improvement Company, then said company agrees to convey to said George A. Maxwell, his heirs or assigns, at his cost and expense, without warranty except as against itself and successors, and those claiming under or through it, all that lot, tract or parcel of land situate, lying and being in the county of Duval, and State of Florida, lots twenty-nine (29), thirty (30), thirty-one (31), the north-half of lot thirty-four (34), lots thirty-five (35) and thirty-six (36) of the supplement to Riverside, according to plat recorded in Book C, page

434, Duval county records of deeds. And more particularly described in a deed dated February, 1893, from George A. Maxwell and Annie J. Maxwell to said company.

"Upon failure for three consecutive months to pay the monthly installments aforesaid, or failure for three consecutive months to keep and perform any of the covenants herein contained, then and in any such event, the entire debt shall *ipso facto* become due, payable and collectible, and said tenancy shall cease.

"Said company further agrees, that so long as said George A. Maxwell shall pay the monthly installments aforesaid, and conform to the other obligations of the contract aforesaid, as well as the by-laws of the company, that he shall have, use, occupy and enjoy the premises; but upon any such default for three consecutive months said tenancy shall cease.

"In Witness Whereof, said company has caused these presents to be signed by its president and secretary, and its corporate seal affixed this 13th day of February, A. D. 1893.

Executed in presence of

W. B. CLARKSON, (Seal.)

J. D. BOURS, (Seal.)

The Jacksonville Loan and Improvement Company.

By Joseph H. DURKEE (Seal.)
President,

W. A. BOURS (Seal),
Secretary."

On the fourth day of December, 1897, the complainant filed a general replication to the answer of the defendants, in the usual form.

28 S. C.

On the fourth day of March, 1898, the complainant filed a praecipe setting down said cause for hearing, which was entered in the Chancery Order Book of the records of the court.

On the twenty-seventh day of June, 1898, the court rendered the following decree: "This cause came on to be further heard upon bill and answer and replication, and was argued by counsel, and thereupon, upon consideration thereof, it was ordered, adjudged and decreed as follows, viz: That the demurrer interposed by the defendant, Geo. A. Maxwell to the cross bill filed herein by the defendant, Quincey E. Brown, is sustained. That the complainant have the relief prayed in and by its bill herein; that this cause be referred to C. S. Adams, Esq., a practicing attorney of this court, as special master herein, to take and state an account of what is due to complainant. In stating the said account, the said master will charge the defendant with what is due to complainant, for principal, interest and fees, under the terms of the agreement mentioned in complainant's bill, and a copy of which is attached thereto, also with all taxes and insurance premiums paid out by complainant on said mortgage property mentioned in complainant's bill, with interest thereon from the date of payment. The said master will also ascertain and report to the court what sum would be a reasonable fee to be allowed to complainant for the services of its solicitor herein. The master will reduce to writing and file with his report all evidence adduced before him, upon which he has acted. If any sums have been paid by the defendant Maxwell, or by any other person for him, upon the indebtedness, evidenced by the said agreement, credit shall be given him by the said master for the same, in stating the account."

Maxwell v. Jacksonville Loan & Imp. Co.—Statement.

On the twenty-second day of August, 1898, the special master, Charles S. Adams, filed his report, to which the defendants filed exceptions; and on the 21st October, 1898, the court rendered the following decree.

"This cause coming on to be heard upon the exceptions filed herein by Geo. ⚫. Maxwell and his wife to the report of special master Chas. S. Adams, filed herein August 22nd, 1898, was argued by counsel for the defendants, Geo. A. Maxwell and wife, and thereupon, upon consideration thereof it is ordered, adjudged and decreed that the said exceptions to the said report be overruled and the said report is in all things confined. It is further ordered, adjudged and decreed that all and singular the mortgaged premises mentioned in the bill of complaint in this cause, and described as follows, to-wit: 'All the following pieces, parcelts, lots or tracts of land situate, lying and being in the city of Jacksonville, county of Duval and State of Florida, and known and described as follows: Lots twenty-nine, thirty, thirty-one, the north half of lot thirty-four, lots thirty-five and thirty-six of the supplement to Riverside, according to plat recorded in Book Q, page 434, Duval county records of deeds, and being the same property conveyed to George A. Maxwell by Brooke G. White by deed dated April 10th, 1887, and recorded in book "B F" page 427, Duval county record of deeds, except the southerly fifty by one hundred and fifteen feet of said lot thirty-four conveyed to C. S. Kenyon, by deed dated March 28th, 1892, and recorded in Book 80, page 277, Duval county records, or so much thereof as may be sufficient to raise the amount due to complainant for the principal, interest and costs in this case, including the solicitors' fees of complainant's solicitor, and which may be sold separately without material injury to the

parties in interest, be sold at public auction, by or under direction of said special master; that the said master give notice of such sale, according to the course and practice of this court; that the complainant, or any of the parties in this cause may become the purchaser; that the master execute a deed to the purchaser of the mortgaged premises on the said sale; and that the said master, out of the proceeds of the said sale pay the costs of such sale, the costs in this suit, to be herein taxed by the clerk, and pay to complainant or his solicitor the sum of nine hundred dollars for the services of complainant's solicitors herein, and the sum of ten thousand one hundred and three and 99-100 dollars, the amount reported due by said master, together with legal interest thereon from the date of the said report, or so much as the purchase money of the mortgaged premises will pay of the same; and that he bring the surplus moneys, arising from the sale, if any there be into court, to abide the further order of court. And it is further ordered and decreed that the defendants and all persons claiming, or to claim from or under said defendants, or any of them since the commencement of this suit, be forever barred and foreclosed of and from all equity of redemption and claim of, in and to said premises. And it is further ordered that the purchaser or purchasers at such sale, be let into possession of the premises upon production of the master's deed. It is further ordered that said special master report his acts and doings to this court. Done and ordered this the 21st day of October, 1898."

On the 4th day of November, 1898, the defendants, George A. Maxwell and Annie J. Maxwell, entered their appeal from the foregoing decree to the January term, 1899, of this court.

Maxwell v. Jacksonville Loan & Imp. Co.—Opinion of Court.

HOCKER, J., (*after stating the facts.*)

The assignments of error are: 1. The court erred in the decree dated June 27th, 1898, settling the equities and referring to master.

2. The court erred in the decree rendered October 21, 1898, confirming the master's report and ordering sale.

Two contentions are made by appellants under the first assignment of error; 1st, that on the fourth of March, 1898, the day the complainant below set the cause down for hearing in the chancery order book, the time for taking testimony had not expired, and that the effect of this action was to accept all the allegations of the answer as true; 2nd, that even though the time had expired for taking testimony when the cause was set down for hearing, still the allegations of the sworn answer were responsive to those of the bill, and, raising an issue upon them, rendered it improper for the court to make decrees in favor of the complainant, without any evidence upon those issues overcoming the answer. We will examine the first of these contentions.

Rule 17 of "The Rules of the Circuit Court in Equity Causes" provides: "Three months and no more *shall* be allowed for the taking of testimony *after* the cause is at issue, unless the judge shall upon special cause shown ·by either party, enlarge the time," &c.  Rule 85 of the same rules provides "*after* the cause is at issue, and the time for taking testimony has elapsed, *either* party may, at any time, set the cause down for a hearing, unless further time for taking testimony is agreed upon by the parties, or is allowed by the court or judge", &c.  It will be noticed that the replication was filed on the fourth of December, and the cause was set down for hearing on the fourth of

March, 1898, and the question presented is whether the time for taking testimony expired on the day before (March 3rd), or whether it expired with the last minute of the 4th. The term "months" as used in Rule 71, *supra*, must be understood as calendar months. Guaranty Trust & Safe-Deposit Co. v. Buddington, 27 Fla., 215, 9 South. Rep., 246.

The republication was filed on the fourth of December, 1897, and the cause was on *that day* at issue. Three months *after* that day is allowed by Rule 71 for taking testimony. Even though this case were one in which justice required that the court should take notice of a fraction of a day, it does not appear at what particular moment of the fourth of December the replication was filed. It may have been filed on the last moment of the day. But no reason appears why this should be done, and the general rule is that the law does not take cognizance of fractions of a day. Louisville v. Savings Bank, 104, U. S. 469.

There is a good deal of conflict of authority upon the question whether, when an act is to be performed within a specified period from or after a day named, the day designated is to be included in or excluded from the computation. Without going into a review of the numerous authorities, we think the weight of authority is in favor of the exclusion of the designated day, and the inclusion of the last day of the specified period. The leading case of the more modern authorities seems to be Lester v. Garland, 15 Vesey Jr., 248. In this case Sir John Lester by his will left certain property in trust for the children of his sister, Sarah Pointer, upon condition that she should within six calendar months after the testator's death give security not to marry B., with a proviso for the

property to be otherwise disposed of if she should refuse
or neglect to give such security. The testator died on the
12th, of January, 1805. On the 12th of July, 1805, she
executed the security. It was held by the court that the
six months was exclusive of the day of the testator's
death, and that the security was given in time. In the
case of Sheets v. Seldon's Lessee, 2 Wall., 177, Justice
FIELD in the opinion says: "The general current of the
modern authorities in the interpretation of contracts, and
also of statutes, where time is to be computed from a par
ticular day, or particular event, as when an act is to be
performed within a specified period *from* or *after* a day
named, is to exclude the day thus designated and to in-
clude the last day of the specified period." The case of
Bemis v. Leonard, 118 Mass., 502, contains an instructive
review of the authorities by Judge GRAY, who rendered
the opinion. His conclusion is that, "in this common-
wealth the general rule, as applied in a variety of circum-
stances, and now well established is, that in computing
time from the date, or from the day of the date, or from
a certain act or event, the day of the date is to be exclud-
ed, unless a different intention is manifested by the in-
strument or statute under which the question arises." The
case of Cromelien v. Brink, 29 Pa. St. 522, is also instruc-
tive. One of the questions was whether a redemption
from a tax sale was made in time. The act requiring the
redemption to be made within two years *after* sale. The
land was sold on the 10th of June, 1850, and redeemed on
the 10th of June, 1852. The court held that in computing
the time the day of sale was to be excluded, and that the
redemption was made in time. The court, after examin-
ing a large number of authorities, says: "This is author-
ity enough. The reasoning which supports these cases

is more conclusive. A day is always an indivisible point
of time, except where it is cut up to prevent injustice.
In the sense of these statutes it has neither length nor
breadth, but simply position without magnitude. If the
time for redemption were fixed at one day after the sale,
that day could not be the day of the sale; for it might be
made at the last moment of the day, and the owner, be-
ing thus prevented from tendering on that day, would lose
his right. The time mentioned must therefore be the fol-
lowing day. So of one year, and of two years."

Our rule 63 of the Rules of Circuit Courts in Common
Law Actions, which provides that, "in all cases in which
any particular number of days not expressed to be clear
days is prescribed by the rules of practice of the *courts,*
the same shall be reckoned *exclusively* of the first day and
*inclusively* of the last day, unless the last day shall hap-
pen to fall on Sunday (Christmas day, Good Friday or a
day appointed for a public fast or thanksgiving), in
which case the time shall be reckoned exclusively of that
day also" is copied literally from the Hil. Term, 2 W. 4,
reg. 8, and seems to embody the latest and best view of
the question. See note to Lester v. Garland, *supra.* Ap-
plying the doctrine of these authorities to the instant
case, it is our opinion that the three months allowed for
taking testimony did not expire until the last minute
of the 4th of March, 1898, and had not expired when the
cause was set down for hearing by complainant below.
But did that fact at the hearing in this case have the ef-
fect of making the answer evidence of all the facts al-
leged therein whether responsive to the bill or not? We
think not. The defendants did not object at or before
the hearing that the cause was prematurely set down.
The three months allowed by the rule for taking testimo-

ny is intended to apply to both complainant and defendants. Ingle v. Jones, 9 Wall., 480. If the defendant, without objection, goes to a hearing prematurely ,or on a setting down prematurely made, he waives the right given by the rule. Hart v. Bloomfield, 66 Miss., 100, 5 South. Rep. 620; 2 Beach's Mod. Eq. Prac., Sec. 628. We do not discover that the defendant at any time before or at the hearing objected thereto, or asked for further time to take testimony in support of the answer. The allegations of the answer therefore not responsive to those of the bill, if any such there be, are not to be taken as proven. 1 Ency. Pl. & Pr. 920. Of course a different rule prevails where a bill is set down for a hearing by complainant on bill and answer without replication. Lee v. Bradley Fertilizer Co., 44 Fla. 787, 33 South. Rep. 456, 1 Ency. Pl. & Pr., 924.

The next contention involves a consideration of the effect of the answer in this case. It is stated in Cooper v. Tappan, 9 Wis., 361, that, "where an answer in chancery admits facts which charge the defendant, and sets up also matters which discharge him, the latter is not evidence for him unless the charge and discharge arise out of one and the same transaction, in which case the answer may state the whole transaction, and it will be held responsive to the bill and be evidence in favor of the defendant." This case was heard on bill, answer and replication.

In the case of Green v. Vardiman, 2 Blackf., 324, text 330, it was said that, "when an answer is confined to such facts as are necessarily required by the bill, and those that are inseparably connected with them, forming a part of the same transaction, the answer is to be taken as true, when it discharges as well as charges the defendant." This case was heard on bill, answers, replication and ex-

hibits. In this case, p. 330, it is further said: "But it must be further observed that facts set forth in an answer and considered as true are to be considered according to the legal import."

In the case of Robison v. Cromelein, 15 Mich. 316, it is held, "where a bill to foreclose a mortgage alleged to have been given in consideration of an actual indebtedness, to an amount named, which it was stated remained unpaid, and called for an answer under oath, an answer purporting to set forth the real circumstances under which the mortgage was given, and showing it to have been in part for money advanced, and in part for property at a valuation, which the party had failed to convey according to agreement, is held to be responsive, inasmuch as it explained the *whole* transaction out of which the mortgage originated, and upon which its validity depended." The opinion in this case was rendered by Judge COOLEY. For a further discussion of this question, see 1 Ency. Pl. & Pr., 916 and notes; Bryant v. Groves, 42 West Va. 10, 24 S. E. Rep. 605.

The bill in the instant case prayed "to the end therefore that the said defendants may, if they can, show why your orator should not have the relief prayed, and may, upon their several and respective corporal oaths, and according to the best and utmost of their several respective knowledge, information, remembrance and belief, full, true, direct and perfect answer make to each of the several allegations hereinbefore numbered and set forth," &c.

The third paragraph of the bill alleges that $7,300 was advanced to the defendant, George A. Maxwell. The answer to this paragraph denies that $7,300 was advanced or paid to George A. Maxwell, but admits that between 13th of February, 1893, and 30th October, 1893, complain-

ant paid divers persons at divers times, for the use of George A. Maxwell, certain sums of money, the exact amount of which the defendants are not advised, but amounting as near as defendants can ascertain to be between $5,800 and $6,500. And further alleges that complainant claimed and took out of the $7,300 agreed to be advanced the sum of $730, as a commission or discount.

The fifth paragraph of the bill sets out the obligations of the defendant George A. Maxwell, as contained in the exhibit to the bill marked "C." This, in brief, was a sealed instrument executed by Maxwell and wife, agreeing to pay complainant as rent for the premiess involved $82.13 on the 11th day of each month for 120 months, each monthly installment unpaid to bear interest at 7 per cent. per annum until paid, and subject to such penalty as the by-laws may prescribe, and agreeing, among other things, that should default be made for three consecutive months in the payments of the monthly installments, or in keeping any covenant of the agreement, the entire balance due upon the sum aforesaid shall at once become due and collectible. It further provides that in case of default in the payment of any sum or the performance of any duty undertaken or imposed by the by-laws, the alleged tenancy should cease, and defendants should deliver possession to the complainant. The answer to this fifth paragraph states, in substance, that the real transaction was not a lease at all, but that the property of the defendants was hypothecated as security for the repayment of the money agreed to be advanced, viz: $7,300; that no money was advanced except as alleged in the third paragraph of the answer; that the monthly installments of $82.13 was made up of $60.84 principal claimed to have been loaned, and $21.29 interest, and that the defendants are advised

the agreement is fraudulent, corrupt, illegal and usurious, in that by said agreement they have become "obligated to pay a greater sum than the actual principal sum received together with interest at the rate of ten per centum per annum;" and the answer further states that under the agreement defendants are obligated to pay, and complainant is seeking to require them to pay in addition to 7 per cent. on $7,300, and in addition to 7 per cent. on each monthly installment remaining unpaid, a fine of 10 per cent. on each of said installments unpaid for every month they are unpaid, and that defendants thereby obligated themselves, as they have been advised, and complainant is seeking to require them to pay more than the actual principal received, together with interest at the rate of ten per centum per annum, for the time said defendants have had the use of the money actually received.

The answer alleges that Exhibits "A," "B," and "C," attached to the bill as parts thereof, and exhibit "A" attached to the answer as part thereof, are all parts of one transaction, and exhibit A contains, among other things, the following provision: "Upon failure for three consecutive months to pay the monthly installments aforesaid, or a failure for three consecutive months to keep and perform any of the covenants herein contained, then and in any such event, the entire debt shall *ipso facto* become due, payable and collectible, and said tenancy shall cease."

The defendants, instead of doing so by a plea, have set up the defense of usury in their answer, as is permissible under Rule 67 of Circuit Court Rules in Equity. The facts stated in the answer as constituting usury are given in reply to the interrogations of the bill, and are developed in a natural way out of the original transaction. Governed by the doctrines of the cases hereinbefore cited

upon the question, we think the answer is responsive to the interrogations and allegations of the bill, and the next question to be determined is, does the answer show usury? In order to a determination of this question our usury statute must be examined, which is as follows:

### "CHAPTER 4022—(No. 13.)

### AN ACT Defining Usurious Contracts and Prescribing Penalties and Forfeitures on Same.

*Be it Enacted by the Legislature of the State of Florida:*

Section 1. That all contracts for the payment of interest upon any loan, advance of money, or forbearance to enforce the collection of any debt, or upon any contract whatever, at a higher rate of interest than ten per centum per annum, are hereby declared usurious.

Sec. 2. That it shall not be lawful for any person, company or corporation, to reserve, charge or take, for any loan or advance of money, or forbearance to enforce the collection of any sum of money, a rate of interest greater than ten per centum per annum, either directly or indirectly, by way of commissions for advances, discounts, exchange, or by any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a greater sum than the actual principal sum received, together with interest at the rate of ten per centum per annum as aforesaid; *Provided, however,* That the business of and loans made by building and loan and other mutual benefit associations to its members, when made and conducted under the provisions of Chapter 3709, laws of Florida, approved May 31, 1887, and acts amendatory thereof, and such other acts as may hereafter be passed regulating

the conduct of such associations, shall not be considered usurious within the intent and meaning of this act.

Sec. 3. That any person, company, or corporation, violating the provisions of this act, shall forfeit the entire interest so charged, or taken or contracted to be charged, reserved, or taken, and only the actual principal sum of such usurious contracts can be enforced either at law or in equity; *Provided, however,* That no *bona fide* indorsee, or transferree, of negotiable paper, purchased before maturity, shall be affected by any usurious interest, \* \* \* \* ,"

It will be observed that the first section defines usury in general terms. The second section from the beginning down to the proviso, is evidently to be divided into two clauses; the first clause making it unlawful to receive, charge or take for a loan or advance of *money,* or forbearance to collect money a rate of interest greater than 10 per cent. per annum, either directly or indirectly, by way of commissions for *advances, discounts* or *exchanges.* The second clause connected with the first by the disjunctive connection *or* reaches out and embraces other methods, and makes unlawful *"any contract, contrivance or device whatever,* whereby the debtor is required or *obligated* to pay a greater sum than the actual principal sum received, together with interest at the rate of ten per cenum per annum, as aforesaid." It is plain that "the greater sum" spoken of need not necessarily be received as interest, and this becomes more evident when we examine the meaning of the word "obligated". It is a participle from "obligate," and has the same root as the noun "obligation."

In Webster's Unabridged Dictionary, obligation (in law) is a bond with a condition annexed and a penalty for nonfulfillment. In Bouvier's Law Dic. (Rawle's ed.) obliga-

tion is defined as a "bond containing a penalty with a
condition annexed for the payment of money, performance
of covenants, or the like."

Our statute is unlike, both in structure and phraseology
that of any other State. None of them end in such a cli-
max as ours. If the legislature of Florida had been con-
tent with the old usury law which is found in Thomp-
son's Dig. pp. 234-235, and with the construction of that
law by this court, as contained in Morrison v. McKinnon,
12 Fla., 552, it would doubtless have re-enacted the old
law. But with the previous law and its construction be-
fore them, they enacted the present law, in different lan-
guage, as if endeavoring to compass a different meaning.
We are aware of the fact that in Morrison v. McKinnon,
*supra,* this court, in construing the old statute, held that
it refers to such contracts as provide for a certain uncon-
tingent repayment of the principal sum or value, and a
certain uncontingent *rate* in value for its use." We are
aware of the fact that many of the courts, in construing
their usury laws, hold that stipulations to the effect that
if the debt be not paid at maturity, it shall draw interest
thereafter at a greater rate than the statutory limit, are
now generally regarded as penalties to induce prompt
payment, and as the debtor has it in his power to avoid
paying the penalty by the discharging the debt when due,
such agreements are held free from usury. Webb on
Usury, Secs. 119 and 120. While the policy of this meth-
od of constructions is plain enough, the logic seems ob-
scure. The statutes are construed as though they con-
tained provisos or qualifying words exempting from their
operation such contracts as contained alternative provi-
sions for penalties, and liquidated damages, or the con-
tracts are construed as though they never contained those

provisions, or as though they were not the contracted
price or premium for the use or forbearance of money;
and thus the logical law of identity, which necessitates us
to think that a thing is always equal to, and never less
than, the sum of its parts, is ignored, and commercial pol-
cy is substituted for the legislative intent, as evidenced by
the ordinary meaning of words. But this view has not
been adopted universally by the courts. In Tennessee,
since Richardson v. Brown, 9 Baxter 242, it has been held
that if an obligation bear legal interest until maturity,
and a higher rate after maturity, that the higher rate is
for forbearance of the debt, and is clearly usurious.
Bang v. Windmill Co. 96 Tenn., 361, text 365, 34 S. W.
Rep., 516.

In Sanner v. Smith, 89 Ill., 123, the court holds that a
provision in a promissory note for a rate per cent. in
excess of legal interest after maturity as liquidated dama-
ges for non-payment, if inserted with the *single purpose*
(italics ours) to secure prompt payment, does not render
the transaction usurious, but that where a promisory note
was given, payable six months after date with interest
payable annually, at the rate of 15 per cent. "from due
until paid," the first six months interest having been
paid in advance, and after its maturity numerous install-
ments of interest at the rate of 15 per cent. were paid and
indorsed, usually each six months at that rate in advance
running through several years, the transaction was held
usurious." In Cooper v. Tappan, 9 Wis., 361, text 366,
it is held that if a party makes a conditional agreement
by which, upon the non-happening of a certain contin-
gency, he is to receive usurious interest, but, upon the
happening of such contingency, he may withdraw his loan
at only legal interest, such condition does not relieve the

agreement of its usurious character." In Cleveland v. Loder, 7 Paige, 557, Chancellor Walworth held that "upon a contract for the loan of money, the lender is not at liberty to stipulate even for a contingent benefit beyond the legal rate of interest, if by the terms of the agreement he has the right to demand a re-payment of the money lent, with the legal interest thereon at all events."

What now are the facts presented by bill and answer and the exhibits to them? The complainant is not operating as a building and loan association under the laws of Florida, and does not come within the proviso of the second section of the usury act (Chapter 4022, laws 1891). The defendant owned one share of stock in complainant company, and applied to it for a loan of $7,500. The complainant agreed to advance $7,300, and the several instruments referred to as exhibits "A," "B," and "C" to the bill, and exhibit "A" of the answer, were executed,— the last three on the 13th of February, 1893, and evidently as parts of one transaction. Defendants deeded property to complainant and took a lease of it for what is called a monthly rental of $82.13 for 120 months. The answer denies that $7,300 was advanced, but alleges that 10 per cent. of this amount was deducted as a commission, and only $6,570, was advanced. It was agreed that if these monthly payments of so-called rent of $82.13 were not met at maturity, defendants should be liable thereon to a fine of 10 per cent. for each month they were not paid— and 7 per cent. interest in addition, from default. It is alleged in the answer, which is supported by the exhibits, that if there should be default in the payment of three consecutive monthly installments of $82.13, "the entire debt *ipso facto* shall become due, payable and collectible." It is further alleged in the answer that no sum was ever

29 S. C

advanced directly to the defendants, but that certain moneys, in the aggregate between $5,800 and $6,590, were paid out from time to time for his benefit to divers persons between 13th of February, 1893, and 30th October, 1893. The exact amount the defendants have not been able to ascertain. It is alleged in the bill that the amount of the monthly installments, $82.13, was obtained by calculating interest on $7,300, for the mean period the loan had to run at 7 per cent., adding interest to the principal and dividing by the number of months, viz: 120. An accurate calculation shows $82.12½. The same result may be obtained, however, and this is the appropriate one, by calculating interest on $6,570 at 10 per centum per annum, for the mean period of sixty months, and adding interest to principal and dividing by 120, the number of months. In other words, under all the disguises of the language employed, the complainant was really lending or advancing money at the rate of 10 per cent. per annum, with additional liability to 10 per cent. damages for default of payment of any one of these monthly installments, and with liability of 7 per cent. additional interest on them from the default, and with liability to have the whole debt mature if any three consecutive monthly payments were not made, with no provision in the contract for eliminating unearned interest, etc., when precipitated to maturity. The possible liability which the defendants incurred, if these defaults were made for 120 months, amounts to something like $75,000, on a loan or advance of $6,570. We think the answer, in bringing out clearly all these facts, growing out of the original transaction, was responsive to the bill, and that the facts set up show contrivances and devices whereby the borrower was "obligated" to pay a *greater sum* than the actual princi-

pal *sum* received together with interest at the rate of ten per centum per annum.

If we go further and examine the master's report we find that the $6,570, while placed to the credit of defendant on the books of the company, was not segregated or isolated, or appropriated to his use, on the 13th of February, 1893, but was checked out by the officers of the company from time to time upon the order of its building committee, in paying for the materials and labor which went into the houses erected for the defendant. It does not even appear that the complainant had $6,570 on hand when the loan was made. It appears that the first monthly installment was due on the 11th of March, and that the complainant paid out on February 24, 1893, $2,734.43, and on March 8th, $100. And yet the first monthly installment consisted of $54.75 of principal and $27.37½ interest—the latter being the interest on the whole debt for one month. Under this aspect of the case nearly or quite half of this $27.37½ was unearned and usurious from another standpoint than the one mentioned—as it does not appear that the complainant retained the money with the express consent of the borrower, or by virtue of any known usage or custom of complainant in dealing with borrowers; and by the terms of the contract the money was to be advanced on the 13th of February, 1893. And again, as the contract was made on the 13th of February, 1893, for the advance, and the monthly installments were payable on the 11th of each subsequent month for 120 months, and each contained the interest on the whole sum for one month at 10 per cent. per annum, there are two days of interest, over 10 per cent., embraced in these monthly installments, aggregating about $3.60 usury in the contract,

and not depending on any contingency, and not being in the nature of a penalty or liquidated damages.

We think the decree appealed from, dated October 21st, 1898, is erroneous; that the recovery of complainant is limited by the statute to his principal, without interest; that as there was default in the payment of more than three consecutive installments, containing a part of the principal, the suit was not brought prematurely, and that complainant is enittled to reasonable solicitor's fee.

The decree appealed from is reversed at the cost of appellee, with directions that the court enter a decree for $6,600.29, the aggregate amount of advances admitted to have been made, and also for such moneys as have been pa'd out by complainant for insurance, under the contract, and such reasonable solicitors' fee as shall be shown to the court by evidence to be taken, to be reasonable, under the circumstances of this case.