NANNIE C. BENSON, a feme sole, *Appellant*, v. FIRST TRUST & SAVINGS BANK, a corporation, laws of Florida, as Trustee, *Appellee*.

134 So. 493.

142 So. 887.

Division B.

Opinion filed May 8, 1931.

Petition for rehearing granted May 23, 1931.

Opinion on rehearing filed July 9, 1932.

Opinion on Second Rehearing filed December 27, 1932.

138

*Shipp, Evans & Kline,* of Miami, for Appellant;
*B. R. Cisco,* of Miami, for Appellee.

DAVIS, J.—This was a suit to foreclose a mortgage given to secure a note dated December 17, 1926, payable three years from date, December 17, 1929, and containing the following clause:

"This note is one of an issue of mortgage notes amounting in the aggregate to $14,000.00 number from one ———, both inclusive, being for $14,000.00 each, all equally secured by a mortgage for like aggregate amount, of even date herewith, made by the undersigned to the Trustee herein."

The mortgage which the note secured contained the following clause:

"If any of said sums of money herein referred to be not promptly and fully paid within thirty days next after the same severally become due and payable, or if each and every the stipulations, agreements, conditions and covenants of said promissory note(s) and this deed, or either, are not duly performed, complied with and abided by the said aggregate sum mentioned in said promissory note(s) shall become due and payable forth-

with or thereafter, at the option of the Trustee, as fully and completely as if the said aggregate sum of ........ Dollars, or such unpaid balance thereof was originally stipulated to be paid on such day of default or breach, anything in said promissory note(s) or in this deed to the contrary notwithstanding, and the equity of redemption of the Mortgagor(s) may thereupon be immediately foreclosed by said Trustee.''

Default occurred in interest payments and suit was filed on the 6th day of April, 1928, to foreclose the mortgage demanding payment of the principal in the sum of $14,-000.00 and interest from date at the rate of 8 per cent. less the sum of $85.00 which it was alleged had been paid on the first annual interest installment. The interest accrued and claimed amount to $1,462,22, being interest for one year, three months and twenty days on $14,000.00 at the rate of 8 per cent. per annum.

The record shows that the defendant received for the note and mortgage the sum of $11,034.72; that the sum of $465.28 was paid to a broker who was the agent of the mortgagee. The pleadings present the issue as to whether or not this transaction comes within the purview of section 4855 R. G. S., 6942 C. G. L. of Fla., which is as follows:

"Forfeiture and penalty in case of excessive interest or charges.—Any person, association of persons, firm or corporation, or the agent, officer or other representative of any person, association of persons, firm or corporation lending money in this State who' shall wilfully and knowingly charge or accept any sum of money greater than the sum of money loaned and an additional sum of money equal to twenty-five per cent. per annum upon the principal sum loaned, by any contract, contrivance or device whatever, directly or indirectly, by way of commissions, discount, exchange, interest, pretended sale of any article, assignment of salary or wages, inspection fees or other fees, or otherwise, or for forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both principal and interest to the party charged such usurious interest, and

shall be deemed guilty of a misdemeanor, and on conviction, be fined not more than One Hundred Dollars, or be imprisoned in the county jail not more than ninety days, or both, in the discretion of the Court.''

The complainant in this suit was the original mortgagee and the defendant was the original mortgagor.

The court below found and adjudged that in this transaction the complainant had not charged or accepted an amount equal to 25 per cent per annum in excess of the amount loaned, but had charged in excess of 10 per cent and for that reason should forfeit the interest. It was also found by the Master, and apparently concurred in by the Chancellor, that the amount of $465.28 was a proper charge against the mortgagor for the services of the broker. It is not necessary for us to determine whether this finding was correct or not, as without this, the amount sought to be collected by and through this bill of complaint is more than 25 per cent per annum in excess of the loan, whether we consider the loan $11,034.72 or $11,500.00. By the exercise of the option to take advantage of the acceleration clause the complainant in this case by its bill of complaint has *attempted* to force the defendant to pay interest and what is termed a bonus combined in the sum of $3,962.22 for the use of, at most, $11,500.00 for a period of 1 year, 3 months and 20 days. This demand was, and is, entirely within the terms of the contract.

In Maxwell v. Jacksonville Loan & Improvement Co., 45 Fla. 425, 34 So. 255, this court, speaking through Mr. Justice Hocker, said:

''Where it appears that A, a corporation, but one not operating under the building and loan association laws of Florida, makes a contract with B, who owns one share of stock in A, whereby A agrees on the 13th of February, 1893, to advance or loan B $7,300 at 7 per cent. interest per annum, and that the interest should be calculated and added to the principal, and the sum thus obtained should be divided into 120 equal monthly

payments of $82.13, due on the 11th day of each succeeding month, and that 10 per cent. of the whole sum, or $730 should be deducted as a bonus for making the advance and that therefore, the real transaction was an advance or loan of $6,570 at 10 per cent. interest per annum; and that under the terms of the contract a penalty of 10 per cent. was to be imposed on B if he made default in paying any one of these monthly installments, and that the installment should then also bear interest at 7 per cent. per annum, and that if B made default in the payment of three consecutive monthly installments, 'then and in such event the entire debt shall *ipso facto* become due, payable and collectible'' with no provision in the contract for eliminating any part of the unearned interest, contained in the installments, thus precipitated to maturity, such a contract is unlawful and usurious under he second clause of the second section of chapter 4022, Laws of 1891, which makes unlawful and usurious 'any contract' contrivance or device whatever whereby the debtor is required or obligated to pay a greater sum than the actual principal sum received, together with interest at the rate of ten per centum per annum.' ''

But under Section 4855 R. G. S., 6942 C. G. L., the lender must ''wilfully and knowingly charge or accept'' a sum of money that is greater than the sum of money loaned and an additional sum of money equal to 25 per cent. per annum upon the principal sum loaned before he can be held to have forfeited the entire sum, both the principal and interest, to the party who was charged such usurious interest.

When this condition prevails the lender not only forfeits the entire sum, both principal and interest, to the borrower, but he likewise commits a violation of the criminal law for which under the terms of the statute he may be fined not more than one hundred dollars or imprisoned in the county jail for not more than ninety days, or both.

In this case if the sum of money lent is not demanded until the full period of three years for which the loan was

made has expired, it must be conceded that the interest charged, though usurious, would not fall within the criminal law, nor would it warrant the forfeiture of the entire sum, both principal and interest, which is subject to forfeiture when the interest charged is criminally usurious.

Likewise, if the mortgagor in this case had paid her interest regularly during the three years for which the mortgage was made, it must be conceded that the acceleration clause of the mortgage could not have been invoked, even if the mortgagee had wanted to ''call'' the loan, and consequently the interest which would then be ''charged or accepted'' while usurious, would not be criminally usurious, nor would it be subject to forfeiture under the precise terms of the statute.

So the contentions of the appellant in this case to the effect that the court should have declared the entire sum, both principal and interest, to have been forfeited, when reduced to its last analysis, is that because the mortgagor by her own act in not paying interest and thereby producing a default, has in effect made the contract criminally usurious though not originally so. This is true because it is only by shortening the period of time for which the loan is to run that the interest which the mortgagee made a contract to ''charge or accept'' exceeds 25 per cent per annum upon the principal sum loaned.

The proposition to be decided then is, does the interest provided for become *criminally* usurious, though not originally so, when the mortgagee under the terms of a provision in his mortgage elects to invoke an acceleration clause and file a foreclosure suit to enforce collection of a sum which embraces that interest for a shorter period than was originally contemplated when the loan was made, if the borrower had performed her contract?

In order to work a forfeiture under the statute the mort-

gagee must not only "charge or accept" 25 per cent per annum upon the principal sum loaned, but he must do so "wilfully and knowingly." The words in the statute, "charge or accept," have a well settled and definite legal meaning and it cannot be said that merely because the complainant has *filed* a bill to foreclose his mortgage, notwithstanding the fact that the filing of such bill is predicated on an acceleration clause therein contained, constitutes "wilfully and knowingly" charging or accepting more than twenty-five per cent. interest so as to render the principal sum subject to forfeiture. This is particularly true when, as in this case, there has been no usurious interest in excess of twenty-five per cent. actually collected or received by the lender, even though it has been demanded in a suit for foreclosure.

While the Supreme Court of Texas in the case of Shropshire v. Commerce Farm Credit Co., 30 S. W. (2nd) 282, appears to have taken a contrary view with regard to a case similar to this one, it must be remembered that our own statute, (4855 R. G. S., 6942 C. G. L.) refers to a "sum" of money, which the lender must "knowingly and wilfully" *charge or accept* before both the principal sum and the interest can be forfeited and the lender prosecuted criminally. Used in connection with the words "sum of money" the word "charge" like its associated word "accept," in the sense that such word is used in this statute, means something more than a mere *demand,* which has not yet been acceded to or judicially enforced to the extent that the proceeds of such enforcement have been received and enjoyed by the lender in violation of the law.

So when usury is alleged under the particular statute here involved, and such usury is established by proof showing an agreement to lend a certain sum for a given number of years for a certain sum of money as interest, which sum as interest, if the loan runs for its full term as agreed on,

will not equal or exceed twenty-five per centum per annum, the legal consequences of such an arrangement must be tested by the results contemplated by the parties on the assumption that both lender and borrower will fully carry out their agreement rather than the special results which may follow, but are not necessarily certain to ensue, when the borrower breaches a covenant which accelerates the maturity of the principal at the option of the lender.

Forfeiture of the principal sum and criminal liability both follow a violation of this particular law. To hold that the effect of an acceleration clause, coupled with the borrower's default, is to render the principal sum subject to forfeiture because the term of the loan is shortened, is to hold that by the same token the borrower by his own default has made his lender guilty of a crime which he would not otherwise be deemed to have committed.

The mere filing of the foreclosure suit did not amount to a charge or acceptance of usurious interest to the extent of 40 per cent per annum as claimed here. On the contrary, it appears that by interposing the defense of usury in the suit the mortgagor has effectually prevented any interest from being collected at all. If it be said that the operation of the acceleration clause when invoked by a mortgagee produces a result by which 40 per cent. interest would be collected, the answer to this proposition is that when this fact is made to appear to the court, the acceleration clause will not be enforced by such court because of its usurious consequences if enforced.

This is not a case where 40 per cent. interest has *actually* been collected. It is simply a case where according to the theory most favorable to the appellant an attempt is being made to collect 40 per cent. interest, which attempt has failed because of the defense of usury interposed by the mortgagor in the court below and the refusal of that court to allow any such result to ensue.

Therefore, it can not be held here that the mortgagee has wilfully and knowingly *charged or accepted* a sum of money greater than the sum of money loaned and an additional sum of money equal to 25 per cent. per annum upon the principal sum loaned, although it may be admitted that such mortgagee has attempted to do so, and if he had obtained the decree here sought in the court below he would in effect have done so.

Since the suit was filed to foreclose a mortgage under an alleged state of facts set forth in the bill which would have authorized such foreclosure, the court below necessarily had the right to determine the issues of fact made by the bill and answer. But having determined, as we think properly, that the complainant had charged in excess of 10 per cent. and for that reason had forfeited all interest under the mortgage, it was error for the court to have decreed a foreclosure of the mortgage under the acceleration clause for failure to pay interest when such interest was not legally enforceable because it had been in contemplation of law forfeited for usury.

Having been forfeited there was no obligation on the part of complainant to pay any interest at all, and the court should have so found and decreed.

It further appears that under the terms of the mortgage the principal sum loaned was not due until three years after the date of the loan. But the suit prayed for foreclosure based on the acceleration clause in advance of the actual maturity of the mortgage. This the court below should have denied and instead the court should have entered its decree postponing a foreclosure until the maturity of the mortgage, at which time if not repaid, the principal sum of the mortgage would become payable and enforceable under its terms.

The decree is affirmed in so far as it adjudicates that the principal sum due is $11,500.00, and in so far as it ad-

judges a forfeiture of all interest and attorney's fees because of the usury found in the transaction. Such decree is reversed in so far as it orders a present foreclosure, which foreclosure should only be allowed after the full three years for which the loan was made shall have expired. Since all interest from the date of the loan to its maturity was adjudged forfeited, it follows that no interest for the period of time intervening between the making of the loan and the time the principal sum becomes due can be allowed.

Reversed in part and affirmed in part, and the cause remanded for further proceedings in accordance with this opinion.

WHITFIELD, P.J., AND TERRELL, J., concur.

ELLIS AND BROWN, J.J., concur in the opinion and judgment.

BUFORD, C.J., dissents.

BUFORD, C. J., dissenting.—I am in entire accord with what has been said in the opinion prepared by Mr. Justice Davis down to the end of the quotation from the case of Maxwell vs. Jacksonville Loan & Improvement Company, 45 Fla. 425, 34 Sou. 255, but I can not concur in the remainder of the conclusion reached.

My views as to the law of this case are clearly expressed in an opinion by Mr. Justice Greenwood of the Supreme Court of Texas rendered June 18, 1930, in the case of Shropshire vs. Commerce Farm Credit Co., et al., reported 30 S. W. (2nd Series) 282, in which it is said:

"The argument for defendants in error proceeds on the misleading hypothesis that the borrower had the right to retain the $4,200 for a term of *ten* *y*ears. Thus, it is argued: 'In this case the borrower was entitled to use the money for ten years, and not merely for one year or five years, and the interest he agreed to pay was to be paid, not for the use of the money for one year or for each of the ten years considered separately, but for its use during the whole term of the loan.' But the

contract, by means of the acceleration clause, deprives the borrower of the right to retain the money beyond the date of default in discharging an annual installment of interest, if the creditor so elects. A borrower is no longer entitled to use money after he is obligated to no longer withhold it, and after his creditor can compel collection through sale of his mortgaged property.

The only way this contract can be upheld is by applying the doctrine invoked by defendants in error, announced by most text writers and supported by abundant authority, which Mr. Williston formulates as follows: 'The provision in a pecuniary obligation that on default of the debtor in payment of either principal or interest the entire indebtedness including interest for the full term, or a greater sum than legal interest to the time of default, shall thereupon become immediately payable, is not usurious, though recovery of any excess over legal interest is generally disallowed as penal. Similarly, a provision that on default by the maker an obligation shall thereafter bear a rate of interest higher than the legal rate, though it may be objectionable as penal if the rate is excessive, is not usurious. The principle applicable to those cases has been thus stated: 'Wherever the debtor by the terms of the contract can avoid the payment of the larger by the payment of the smaller sum at an earlier date, the contract is not usurious but additional, and the larger sum becomes a mere penalty.' 3 Williston on Contracts, section 1696; Webb on Usury, sec. 119 p. 134; Long vs. Storie, 9 Hare 546, 41 Eng. Ch. 545; Lloyd vs. Scott, 4 Pet. 226, 7 L. Ed. 840; Ward v. Cornett, 91 Va. 681, 22 S. E. 494, 49 L. R. A. 550.

This doctrine, while quite generally followed, has not escaped criticism. Mr. Sutherland said of the theory that the contract should be upheld because the debtor had it within his power to prevent the increase of his debt by promptly discharging his installment payments; 'This reasoning overlooks the possibility that for want of money the debtor will be unable to avail himself of this relief; this is the very inability, with its distressing consequences, from which it is deemed humane and politic by statutes against usury to shield him. * * * *

If the creditor's power over the necessitous to extort oppressive terms at the lending is deserving of legal check, why limit that restriction to the period of credit? High rates of interest to commence at the end of that period are as likely to be oppressive as when applied before, and more likely to be assented to.' 1 Sutherland on Damages (4th Ed.) No. 318, pp. 997-1000.''

\*  \*  \*  \*  \*  \*  \*

And further, in the same opinion, it is said:

''The principle controlling the decision of the question of usury in Parks vs. Lubbock was again announced in Investment Company vs. Grymes, 94 Tex. 613-615, 63 S. W. 860, 861, 64 S. W. 778, where the court said: 'The question presented is: Did the parties embrace in the 120 notes for the use of the principal debt a sum greater than the original debt would produce at ten per cent. per annum for the time the payor of the note had the use of the money?' Holding the 120 notes usurious, the Court differentiated the Grymes case from the Grider case in 89 Tex. 597, 35 S. W. 1047, as follows: 'In the one now before the court the manner of payment imposes upon the payor *a charge for more time than he had the money.* By the contract in the other case he paid only for the time it was used.' So, the vice in the contract now under consideration is that the acceleration clauses impose on the debtors a charge, enforceable at the creditor's option, in excess of the maximum permitted in this State. Chief Justice Gaines dissented not on the correctness of this principle, but with respect to the construction in the majority opinion of Grymes' contract as regards application of payments. After stating the rule under most authorities that a rate beyond statutory limits to be paid on a loan only after maturity was to be regarded as a penalty, Mr. Sutherland adds in a foot note: 'A statute defining interest as, ''the compensation allowed by law or fixed by the parties to a contract for the use of forbearance or detention of money'' changes the rule, citing Parks vs. Lubbock, 92 Tex. 635, 51 S. W. 322. 1 Sutherland on Damages (4th Ed.) p. 999.

Likewise, it is stated in 27 Ruling Case Law, No. 33

p. 323: 'Where a borrower has agreed to pay a rate of interest not forbidden by law, but has stipulated that in the event of his not making payment at the time specified, the obligation shall bear a higher rate of interest, either from default or from the date of its execution, or that some specific sum shall be paid in addition to the principal and interest contracted for, the increased rate is generally regarded as a penalty and not within the usury laws. * * * * * But under a statute defining interest as the compensation allowed by law or fixed by the parties to a contract for the use or forbearance or detention of money, that which would have been deemed a penalty at common law is made interest, and a stipulation for interest after maturity at a rate in excess of the legal rate is usurious.'

Mr. Page, after giving the general rule treating acceleration clauses like those before us as having no other effect than to provide penalties for nonpayment, adds: 'Under some statutes a contract for a rate of interest after maturity exceeding the legal rate, is usury. This result is reached in Texas under the statutory definition of interest as a sum allowed for the detention of money. In some states which under former statutes allowed interest after maturity in excess of the legal rate, statutes have since been passed specifically forbidding such contracts and making them usurious.'

Page on Contracts, No. 465.

A clear statement of the law which governs our decision is made in 27 Ruling Case Law, at #24 on pages 223 and 224, in these words: 'To constitute usury it is of course essential that an excess of the legal maximum be enacted in consideration of the loan or forbearance. By this is meant an excess of the maximum prescribed by statute. Though there is authority to the contrary, it does not seem requisite that an excess be payable in any event. On the contrary, a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court to so declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is con-

sidered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of the money, and whether, *by the terms of the transaction* and the means used to effect the loan he may, *by its enforcement* be enabled to get more than the legal rate.' ''

On authority of the opinions above referred to, and the cases there cited, my conclusion is that section 4855 R. G. S., 6942 C. G. L. is applicable to the loan here sought to be enforced and that the decree appealed from should be reversed, with directions that the Chancellor enter a decree in favor of the defendants, adjudging a forfeiture of the entire amount claimed, both principal and interest.

### On Rehearing.
#### En Banc.

WHITFIELD, J.—The statutes provide that it shall be usury and unlawful to receive, charge or take for any loan of money, a rate of interest greater than ten per cent. per annum by any device whatever whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of ten per cent. per annum; and that any person wilfully violating such provision shall forfeit the entire interest so charged or contracted to be charged or reserved; and that when said usurious interest is taken or reserved or has been paid, the lender shall forfeit double the amount of interest so reserved, taken or exacted; and that any one who shall wilfully and knowingly charge or accept any sum of money greater than the sum of money loaned and an additional sum of money equal to twenty-five per cent. per annum upon the principal sum loaned, shall forfeit the entire sum, both the principal and interest, to the party charged such usurious interest, and shall be deemed guilty

of a misdemeanor, Section 6938 (4851), 6936 (4852), 6942 (4855) Compiled General Laws, 1927.

The note and mortgage deed taken together constitute the loan contract. Both the note and the mortgage deed require the borrower to pay in three years $14,000.00 with interest at 8 per cent per annum, payable semi-annually; and that "deferred principal and interest payments shall bear interest from maturity at ten per cent." The mortgage deed also provides that if any payment be not promptly made within 30 days after it is due,

"the said aggregate sum mentioned in said promissory note(s) and this deed, or either, are not fully performed, complied with and abided by, the said aggregate sum mentioned in said promissory note(s) shall become due and payable forthwith or thereafter, at the option of the Trustee, as fully and completely as if the said aggregate sum of Fourteen Thousand Dollars or such unpaid balance thereof was originally stipulated to be paid on such day of default or breach, anything in said promissory note(s) or in this deed to the contrary notwithstanding, and the equity or redemption of the Mortgagor(s) may thereupon be immediately foreclosed."

Thus the loan contract makes the period of the loan three years or a less time if the borrower defaults, and requires the payment of $14,000.00 with interest thereon at 8 per cent. per annum, and 10 per cent. interest on deferred payments, though the amount actually loaned was not over $11,500.00. Since the loan contract makes the principal due and payable thirty days after the borrower's default at the option of the trustee, upon suit for foreclosure the amounts recoverable should be determined as of the date of the foreclosure decree.

Under the terms of the note and mortgage deed dated December 17, 1926, the amounts that were charged in the note and mortgage deed, are $14,000.00 principal and 8 per cent. per annum interest thereon, together with 10 per cent. interest on deferred interest payments, making ap-

proximately $3,168.28 interest, plus $14,000.00, the principal stated in the note, making an aggregate charged in the note of $17,168.28, from the date of the note to the date of the decree, April 9, 1929.

The sum of money loaned, not deducting the broker's commission of $465.28 which the chancellor held should be paid by the borrower, was $11,500.00 upon which interest at the rate of 25 per cent. per annum from December 17, 1926, to April 9, 1929, would approximately be $6,632.56, plus the principal loaned, $11,500.00, making a total of $18,132.56. At 10 per cent. per annum the amount of interest on $11,500.00 to April 9, 1929, the date of decree is approximately $2,655.80, which, plus the principal sum loaned, $11,500.00, equals $14,155.00. This shows that the amounts of principal and interest charged by the loan contract, in making the principal stated in the note $14,000.00 instead of $11,500.00 the amount loaned, is $17,168.28 or more than the amount loaned plus ten per cent. per annum thereon, viz: $14,155.00, to the date of the decree, but less than the amount loaned and 25 per cent. per annum thereon, viz: $18,132.56 to the date of the decree. The forfeiture therefore, under the statute is of all the interest on the amount loaned,

As $2,500.00 was taken or reserved as a bonus when the loan note was made for $14,000.00 instead of $11,500.00, the actual sum loaned, and as this amount so taken or reserved made the contract to pay $14,000.00 with 8 per cent. per annum, interest thereon, usurious, the statute provides that the lender "shall forfeit double the amount of the interest so reserved, taken or exacted." The lender also was paid $85.00 of usurious interest, so double that amount is also forfeited to the borrower. This makes the lender forfeit to the borrower twice the amount reserved, viz: $2,-500.00 or $5,000.00 and twice $85.00 interest collected, to be deducted from the $11,500.00 loaned, in addition to the

interest on the amount loaned which is made usurious by the $2,500 bonus retained when the note for $14,000.00 instead of for $11,500.00 was exacted. The decree, therefore, should be for $11,500.00 less $5,000.00 and less $170.00, which is $6,330.00 and a reasonable attorney fee having reference to the amount of the decree.

Reversed for appropriate proceedings.

BUFORD, C.J., AND ELLIS AND DAVIS, J.J., concur.

TERRELL AND BROWN, J.J., dissent.

TERRELL, J., Dissenting.—On December 17, 1926, appellant executed her promissory note to appellee in the sum of $14,000, due three years from date with interest at eight per cent. per annum, payable semi-annually. Appellant secured this note with a mortgage of the same date which provided for the appointment of a receiver or trustee to take charge of the mortgaged property in the event of foreclosure and among other specifications, embraced an acceleration compact as follows:

"If any of said sums of money herein referred to be not promptly and fully paid within thirty days next after the same severally become due and payable, or if each and every, the stipulations, agreements, conditions, and 'covenants of said promissory note(s) and this deed, or either, are not duly performed, complied with and abided by, the said aggregate sum mentioned in said promissory note(s) shall become due and payable forthwith or thereafter, at the option of the Trustee, as fully and completely as if the said aggregate sum of .....................Dollars or such unpaid balance thereof was originally stipulated to be paid on such day of default or breach, anything in said promissory note(s) or in this deed to the contrary notwithstanding, and the equity of redemption of the Mortgagor(s) may thereupon be immediately foreclosed by said Trustee."

April 6, 1928, one year, three months and twenty days after the mortgage was given, no interest having been paid except the sum of $85.00 on the first interest installment and the mortgaged premises having been permitted to

sell for state, county, and other taxes, Appellee as complainant below, pursuant to the acceleration compact, filed its bill to foreclose the mortgage. The bill to foreclose demanded payment of the principal in full and interest from date of the execution of the mortgage to the date of foreclosure at eight per cent. less the $85.00 paid on the first interest installment.

To the bill to foreclose, appellant as defendant below, entered her answer in which she admitted the execution of the note and mortgage but as a defense to their payment, she alleged that neither the said note or mortgage created a legal or binding obligation against her because they were in violation of the statutes of this state prohibiting usury.

We are therefore confronted with the question of whether or not the note and mortgage brought in question are condemned by our statutes prohibiting usury, the same, in so far as applicable to this case, being Section 4855 Revised General Statutes of 1920 (Section 6942 Compiled General Laws of 1927) and is as follows:

"Any person, association of persons, firm or corporation, or the agent, officer or other representative of any person, association of persons, firm or corporation lending money in this State who shall wilfully and knowingly charge or accept any sum of money greater than the sum of money loaned, and an additional sum of money equal to twenty-five per cent. per annum upon the principal sum loaned, by any contract, contrivance or device whatever, directly or indirectly, by way of omission, discount, exchange, interest, pretended sale of any article, assignment of salary or wages, inspection fees or other fees or otherwise, or for forbearing to enforce the collection of such moneys or otherwise, shall forfeit the entire sum, both the principal and interest, to the party charged such usurious interest, and shall be deemed guilty of a misdemeanor, and on conviction, be fined not more than one hundred dollars or be imprisoned in the county jail not more than ninety days, or both, in the discretion of the court."

The record discloses that the defendant actually received for her note and mortgage, the sum of $11,034.72, that the sum of $2500 was charged her as a bonus, and that the sum of $465.28 was paid a broker to secure the loan. By the exercise of its option to invoke the acceleration compact, the complainant seeks by its suit to foreclose, to require the defendant to pay the accrued interest on $14,000. the face of the note, for one year, three months and twenty days at eight per cent., being $1,462.22 which added to the bonus of $2,500 make a total of $3,962.22, exclusive of brokerage, paid for the use of $11,034.72 for the period as stated. Such a demand was warranted by the terms of the contract.

The Chancellor below decreed that the amount so charged or accepted did not equal (to) twenty-five per cent. per annum on the sum loaned but that it did exceed ten per cent. per annum on such sum and should consequently be forfeited. The Chancellor also decreed that $465.28 was a proper charge against the mortgagor for brokerage. The Chancellor's decision proceeded on the theory that the interest charged and the bonus should be spread over the full term of the note.

The statute, Section 4855 Revised General Statutes of 1920, supra, condemns and outlaws any contract, contrivance, or device whatever, whereby any person, association of persons, firm or corporation may wilfully and knowingly charge or accept by way of discount, commissions, interest, exchange, or otherwise, directly or indirectly, any sum of money greater than the sum loaned and an additional sum equal to twenty-five per cent. per annum on the principal sum loaned. The criterion by which the applicability of the statute is determined is whether or not the contract, contrivance, or device embraces within its terms the illegal charge.

The very purpose of statutes prohibiting usury is to bind

the power of creditors over necessitous debtors and prevent them from extorting harsh and undue terms in the making of loans. Under the law and the decisions, usury is largely a matter of intent. It is not fully determined by the fact of whether the lender actually gets more than the law permits but whether there was a purpose in his mind to get more than legal interest for the use of his money and whether, by the terms of the transaction and the means employed to effect the loan he may, by its enforcement be enabled to get more than the legal rate. 27 R. C. L. pages 223 and 224.

Some courts and text writers approve the doctrine that on default of the principal debtor under an acceleration compact like that involved in this case or where the contract provides for a higher rate of interest than the legal rate in the event of a default, that such contract in either event will not be usurious but that the additional and larger sum so required will become a mere penalty. This doctrine is grounded on the fact that the debtor has the power to forestall the operation of the acceleration compact and prevent the increase of his debt by promptly discharging his installment payments but it overlooks the distressing consequences thus precipitated by inability of the debtor to respond which the statutes prohibiting usury were designed to forestall. The statute invoked is directed to the lender and by its terms, any contract, contrivance, or contingency whereby he directly or indirectly gets more than the legal rate of interest is infected with the vice of usury. It (the statute) in no way imputes evil to a debtor who does not pay under his contract. It presumes that he will comply with his contract and prescribes the bounds within which they may be made. Maxwell vs. Jacksonville Loan and Improvement Co. 45 Fla. 425, 34 So. 255; Mitchell vs. Doggett 1 Fla. 356; Tucker vs. Founts, 73 Fla. 1215, 76 So. 130; Shropshire vs. Commerce Farm Credit Co., — Tex. —, 30

S. W. (2nd Series) 282; 27 R. C. L. 223 and 224. Webb on Usury, Section 28.

Three statutes prohibit and punish usury in this state. Section 4851 Revised General Statutes of 1920 (Section 6838 Compiled General Laws of 1927) prohibits the lender from charging more than ten per cent. per annum on the sum loaned and the following Section (Section 4852 Revised General Statutes of 1920) penalizes him by forfeiting the entire interest. Section 4852, Revised General Statutes of 1920 (Section 6939 Compiled General Laws of 1927) prohibits the lender from charging more than ten per cent. per annum on the sum loaned by taking or reserving said amount when the loan is made and penalizes him by forfeiting double the amount of the interest so taken or reserved. Section 4855 Revised General Statutes of 1920 (Section 6942 Compiled General Laws of 1927) prohibits the lender from charging more than twenty-five per cent. per annum on the sum loaned and penalizes him by forfeiting both the principal and interest to the party charged. Violation of the latter statute also subjects the lender to a fine of not exceeding one hundred dollars or imprisonment in the county jail not exceeding ninety days, or both, in the discretion of the court.

If there had been any provision in the note or mortgage to eliminate any unearned or unlawful interest, such a provision might be in mitigation of forfeiture, but we find no such provision and the conduct of the lender precludes the presumption of one. The parties were sui juris, understood the premises, and every phase of the contract appears to have been deliberately executed. If it had been complied with and the note paid at maturity, the amount of interest and bonus paid would not have equalled twenty-five per cent. per annum on the sum loaned and in consequence violative of Section 4855 Revised General Statute, supra, but it would have exceeded ten per cent. per annum

in violation of Section 4851 Revised General Statutes, supra. In this situation, the interest charged would have been forfeited and the bonus having been taken or reserved when the loan was made, would have been forfeited in twice its amount under Section 4852 Revised General Statutes, supra.

But the lender in this case did not elect to let its note run to maturity thereby thus subjecting itself to the milder penalty, but deliberately exercised its option to foreclose after default in the second interest installment, thereby charging $1,462.22 interest and a bonus of $2,500 or a total of $3,962.22 on the sum of $11,034.72 for one year, three months, and twenty days, which it would have been in position to enforce if its suit had proceeded to final decree. This amount was in excess of twenty-five per cent. per annum of the sum actually loaned and was in violation of the harsher statute. Section 4855, supra.

So, from any point viewed, the contract brought in question, made it possible for the appellee to ''charge or accept'' from the appellant more than was permitted. To ''accept'' means to receive, assent to, to understand, in other words, it denotes completed action. ''Charge'' in its legal acceptation has a very broad meaning but as used generally, it has reference to a price demanded for services rendered or goods furnished, to fix or demand such a price, or any act by which the charging party manifests his purpose to demand the amount fixed or allowed for the thing. State ex. rel. Attorney General vs. Atlantic Coast Line R. Co. 48 Fla. 114, 37 So. 652; Freight Discrimination Cases 95 N. C. 434, 59 Am. Rep. 250; Darling v. Rogers 22 Wend. (N. Y.) 485, text 491; Fulmer vs. Southern Ry. Co. 67 S. C. 262, 45 S. E. 196, 198; United States vs. Nord Deutscher Lloyd 186 Fed. 391, text 394.

To work a forfeiture under the statute, the appellee must not only ''charge or accept'' twenty-five per cent. per an-

num on the sum loaned but he must do so wilfully and knowingly." We do not deem it necessary to say more about "charge or accept." The law presumes that appellee was advised as to its rights and being advised, we are forced to the conclusion that the contract, the foreclosure and every element of the charge was wilfully and knowingly made. A thing is wilfully done when it proceeds from a conscious motion of the will, intending the result which actually comes to pass. It must be designed or intention and may be malicious though not necessarily so. "Wilful" is sometimes used in the sense of intentional as distinguished from "accidental" and when used in a statute affixing a punishment to acts done wilfully, it may be restricted to such acts as are done with an unlawful intent. United States vs. Boyd 45 Fed. 851, text 855; State vs. Clark 29 N. J. L. 96.

We do not decide the question of whether or not the sum of $465.28 paid the broker was a proper charge against the mortgagor as with or without this the amount sought to be collected by the suit to foreclose is in excess of twenty-five per cent. per annum of the amount actually loaned. It is not out of place to say, however, that the record indicates that the broker was the agent of the mortgagee and the statute condemns any contract charge, covin or device whereby a lender is enabled, directly or indirectly, to extort more than the permissible rate of interest from the borrower.

We think, therefore, that the transaction or contract challenged was usurious and that when appellee filed its bill to foreclose, and sought to enforce the payment of an amount of interest which, added to the bonus, made a sum in excess of twenty-five per cent. per annum of the amount actually loaned, it in effect "charged" the appellant with a sum in clear violation of Section 4855 Revised General Statutes of Florida. It is no defense that appellant brought

this about by failure to pay the interest. While this fact presents an element of equity that appeals to the conscience of a Chancellor, it cannot be permitted to nullify or intercept the clear mandate of a statute, the avowed purpose of which was to prohibit such loans and which was designed to break up the practice of lenders imposing extortionate terms on borrowers. The whole transaction was infected with the vice condemned by the law and for that reason, both principal and interest must be forfeited.

The judgment below should be reversed.

Brown, J. (Dissenting and concurring specially with opinion of Mr. Justice Terrell).—To render a contract usurious, it must be so when made. If the contract is not usurious at its inception, it cannot be affected with usury by any subsequent usurious transaction. 27 R. C. L. 208 and cases cited. So the first question here is whether this contract was usurious when made; that is, criminally usurious by reason of charging or accepting more than 25 per cent. per annum on the amount loaned, so as to fall within the operation of the statute which forfeits both principal and interest when the lender charges or accepts 25 per cent. per annum or more "by any contract, contrivance or device whatever, directly or indirectly," and which also renders the lender subject to criminal prosecution.

It will be observed that this mortgage contract purported to give the lender the power to declare the whole amount due, both principal and interest, upon thirty days default in the payment of any interest installment, or taxes, etc., it being provided therein that 8 per cent. interest should be payable semi-annually, the principal of $14,000 to become due in three years.

In Webb on Usury, Section 29, it is said: "The test of usury in a contract is whether it would, if performed, result in securing a greater rate of profit on the subject matter

than is allowed by law.'' Now, if this contract had been fully performed by both parties, the rate of interest would not have amounted to as much as 25 per cent; indeed it would have been considerably less. But the contract contemplated that the borrower might possibly make default, and provided that if such default continued for 30 days the aggregate sum mentioned in the promissory note should forthwith or thereafter, at the option of the lender, become due and payable as of the date of such default. A ''bonus'' of $2,500.00 was retained by the lender. Thus the effect of the contract, in view of the retention of this $2,500.00, was to give the lender the option, so far as the contract was concerned, to demand or charge more than 25 per cent. if any default should occur during the first year or year and a half of the contract period, and if the demand was not paid, the lender could, if he chose, exercise the ostensible right to foreclose the mortgage for such an amount. Of course, under the law, such purported contract right was unenforceable on account of its usurious nature, but this is no defense to the charge of usury in the contract itself. If the legal unenforceableness of a usurious contract could be pleaded for the purpose of showing that the contract itself was not usurious and therefore the lender was not subject to the penalties provided by the statute for usurious contracts, the purpose of the statute would be defeated and the penalties therein provided for rendered futile and nugatory.

However, it has been held, apparently by a majority of the decided cases in other jurisdictions, that a provision in an agreement for the payment of money which accelerates the maturity of the debt on default in payment of either interest or an installment of principal does not constitute usury; that such acceleration entitles the lender on default only to the principal and interest then accrued. See 27 R. C. L. 234. Some of the courts uphold the validity of

such contracts on the ground that the additional sum thus accelerated to maturity is not interest, but a penalty, and though the penalty is usually held unenforceable, the principal is not forfeited. The theory underlying this view is that such a stipulation is in the nature of a penalty from which the borrower could relieve himself by a prompt payment of the installments when due. 27 R. C. L. 234, and cases cited. Of course, where the contract is not usurious, the inclusion of an acceleration clause, providing that on default in the payment of interest the principal debt and the interest at the highest legal rate shall become due, does not render it usurious. Graham v. Fitts, 53 Fla. 1046, 43 So. 512. Here, the contract on its face provided for the payment of $14,000.00 three years after date and legal interest payable semi-annually, but the contract was rendered usurious by the retention of a bonus of $2,500.00. Thus the actual amount loaned was at most $11,500.00, and by providing the right to accelerate the maturity of the full amount named in the mortgage and note, upon any default, the effect was that the lender, so far as the terms of the contract were concerned, *reserved the right at its option to charge more than* 25 per cent. upon such default. So the contract itself did not directly and in any event impose a charge of more than 25 per cent; it merely gave to the lender *the option* to make such a charge, in case of default, if the lender should see fit to do so. As is shown by the record this option was in fact exercised one year, three months and 20 days after the date of the contract. But the intent to exercise the option to accelerae the entire note to maturity and to foreclose, on default, may not have been decided on or formed until after the default. The suit was not brought until three months after the second default in payment of interest occurred. So the question recurs, was the original contract conclusively usurious to the extent of 25 per cent. per annum, at its inception, by

reason of embracing this option to accelerate the entire debt to maturity?

In Section 24, 27 R. C. L. 223, the following appears:

"Though there is authority to the contrary, it does not seem requisite that an excess above the amount prescribed by statute be payable in any event. On the contrary a contract is usurious when there is any contingency by which the lender may get more than the lawful rate of interest, whether it is so apparent that it becomes the duty of the court so to declare, or whether it is a case in which it is necessary that the jury should find the facts. Usury, it is considered, does not depend on the question whether the lender actually gets more than the legal rate of interest or not; but on whether there was a purpose in his mind to make more than legal interest for the use of money, and whether, by the terms of the transaction, and the means used to effect the loan, he may by its enforcement be enabled to get more than the legal rate."

Two cases are cited in support of the last two sentences of this text, but they do not seem to fully support the proposition set forth. Thus in one of the cases cited, Spain v. Brent, as Administrator of Hamilton, 1 Wall., 604, 17 Law. ed., 619, the holding of the United States Supreme Court, as expressed in the headnote, is as follows: "Where a paper does not contain a promise to pay anything absolutely in addition to the loan and the interest, and the payment of anything additional *depends upon a contingency, and not upon the happening of a certain event,* it is not sufficient to make a loan usurious." (Italics supplied.)

Of course, the contract here under consideration was usurious to the extent of more than 10 per cent. even if it had run for the full term of three years, because the retention of the bonus of $2,500.00 had the effect of making the interest, even for the full three-year period considerably more than 10 per cent. though less than 25 per cent.

But the question we are now considering, as already stated, is whether by this contract the lender at the time of its execution ''wilfully and knowingly charged'' more than 25 per cent. per annum within the meaning of Section 6942 C. G. L.

It could hardly have been known, or within the contemplation of the parties at the time the loan was made that the borrower would make default at the time she did. Nor had the contract provided that in case of default the entire amount named in the note should *ipso facto* and in any event become due and payable. It merely gave the lender an option to so declare it. This differentiates this contract from the one construed in the Maxwell case, 45 Fla. 425, 34 So. 255. It is not charged that the lender was responsible in any way for the default of the borrower, and the provision in the contract giving the lender the right to accelerate the mortgage debt should not be held to make the contract criminally usurious in its inception unless it appears that it was a mere device to cover and effectuate a usurious intent. As these acceleration clauses are embraced in practically all mortgages, the inclusion of such a clause would not ordinarily be evidence of a usurious intent in and of itself. As was said in an early Texas case, Seymour Opera House Co., v. Thurston, 18 Tex. Civ. App. 417, 45 S. W. 815; 29 L. R. A. (N. S.) 114.

''Where the right to declare the debt due in case of default on the part of the maker of the note is contained in the contract, the time of maturity should not be reckoned only to the day on which maturity was afterwards declared, as contended for by appellant, but to the day fixed in the written contract in good faith for the maturity, with grace added, unless it is waived. This rule may sometimes result in requiring the maker to pay more for the use of money than the rate fixed and limited by law would permit, but it would be on account of the subsequent default of the maker, for which the holder of the note ought not to be held responsible un-

less such provision was made as a device to cover usury.''

I am inclined to think therefore that the contract, when made, was not necessarily usurious to the extent of 25 per cent. per annum.

The question which next arises is whether the subsequent actual exercise within the terms of the contract, of the option to accelerate the debt, after the borrower's default, at such an early time in the period covered by the loan as made it amount to a charge of more than 25 per cent. per annum, resulted in rendering the lender subject to the penalties prescribed in Section 6942, C. G. L. It is true the lender should not on this record be held responsible for the default of the borrower, but the lender was and is responsible for his own act in exercising the option given him by the mortgage contract to declare the full amount due upon the borrower's default. And this was actually done at a time when the amount claimed under the terms of the mortgage contract, added to the amount of the bonus retained, amounted to a demand or charge of nearly 40 per cent. per annum for the use of the amount loaned. While given the option to do so by the contract the lender did not have to make this demand. In spite of the borrower's default, while the lender had the right to do so under its contract, it was not compelled to declare the whole amount due and bring foreclosure proceedings to enforce that demand, and hence the lender must accept the full responsibility for its action in this regard. As we have seen, the fact that this demand could not be legally enforced in the courts is no defense.

The statute says that any person, firm or corporation who wilfully and knowingly ''charges or accepts'' any sum of money greater than the sum of money loaned, and an additional sum of money equal to 25 per cent. per annum upon the principal sum loaned, ''by any contract, contrivance or device whatever, directly or indirectly shall

forfeit the entire sum, both principal and interest.'' This is a highly penal statute and should be strictly construed, but the language used is so broad and sweeping that the writer is inclined to the opinion that it covers the present case. The lender having taken a contract giving it the right to accelerate the entire debt upon default in payment of taxes or any interest installment, and then subsequently, upon such default, having deliberately exercised the option to accelerate the entire debt to maturity, and having filed its bill to foreclose for the full amount, at a time when the bonus retained and the interest provided in the contract together constituted more than 25 per cent. per annum upon the principal sum loaned, necessarily ''charged'' such prohibited sum. And under the facts alleged and proven, it must have done so knowingly and willingly. This action of the lender under the contract considered in connection with the contract previously taken by it from the borrower, which authorized such course of action on the borrower's default, at the lender's option, brought such action within the class of transactions, denounced by said section 6942. The reservation in the original contract of the option to charge what might amount to usury upon the borrower's default, and the subsequent actual exercise of that power upon such default, and the attempt to enforce such demand by suit, certainly amounted to *charging* usury to the extent of more than 25 per cent. within the meaning of the statute.

It is contended by appellee Bank that in taking the note and mortgage it was acting merely as trustee for one John Brand, and that the note, or the beneficial interest in the same, was transferred four days afterwards to J. Herbert Brand; that this is shown by the evidence; and hence the bank is not chargeable with usury. But the bill in this case was filed by the First Trust and Savings Bank ''as Trustee;'' the note for $14,000.00 and the mortgage were

alleged to have been made payable to First Trust and Savings Bank, "As Trustee," and the bill alleged that the said Bank as Trustee was the owner and holder of the note and mortgage; no beneficiary being anywhere named in the note or mortgage, or in the bill; and the answer admitted these allegations. It is true that the Trust Officer of the bank testified that in taking the note and mortgage the bank was acting as trustee for John Brand, and the note offered in evidence, dated December 17, 1926, showed that it was at first "registered" in the name of John Brand; that this registration was cancelled by the Bank and the note registered in the name of J. Herbert Brand on December 22, 1926, four days after its execution. The Trust officer of the bank testified that at the origin of the transaction, when the note and mortgage were executed, the bank held the note and mortgage for the benefit of John Brand, who it appears paid the $11,500.00 and that at the time of testifying the bank held the said papers for the benefit of J. Herbert Brand. The note, which was made payable to the Bank "as trustee," when introduced in evidence, had on it words as follows: "This note is registered at First Trust & Savings Bank, Miami, Florida, and is transferable only upon presentation with written assignment duly acknowledged. Registered December 22, 1926, in the name of John Brand. First Trust & Savings Bank, Registrar, by S. A. Williams." This registration was stamped cancelled, and another similar registration in the name of J. Herbert Brand endorsed thereon, signed by the Bank in the same manner, and dated December 22, 1926.

The defendant objected to the introduction of the note in evidence, on the ground that these endorsements showed that the note was not the property of the complainant Bank as alleged in bill. This objection was overruled by the

Master, but no exception was taken by the defendant to this ruling.

The evidence does not disclose that the note or mortgage were ever assigned, either by written instrument or by endorsement, by the Bank to John Brand, or by the latter to J. Herbert Brand; or that the latter was a purchaser for value without notice; and in view of the allegations of the bill, admitted by the answer, our opinion is that the bank has by the pleadings placed itself in a position where it cannot now avail itself to the defense against the charge of usury on the ground that it was merely acting for, and as trustee of, John Brand, and that J. Herbert Brand subsequently became the beneficial owner of the note before maturity. This would be to go outside of the issues made by the pleadings.

For these reasons, as well as for those stated in the opinion of Mr. JUSTICE TERRELL, I concur with him that both principal and interest should have been decreed to be forfeited, and that the decree of the court below must be reversed.

---

### On Rehearing.

Per Curiam.—In this case there was filed on May 8, 1931, an opinion by MR. JUSTICE DAVIS, concurred in by JUSTICES WHITFIELD, TERRELL, ELLIS and BROWN, and dissented to by CHIEF JUSTICE BUFORD. See Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 Sou. Rep. 493.

Petition for rehearing was filed and granted.

Rehearing was had and the case argued before the whole Court. Upon that reconsideration, this Court adopted an opinion which had been prepared for it by MR. JUSTICE WHITFIELD. The opinion of MR. JUSTICE WHITFIELD was filed July 9, 1932, and as filed was concurred in by JUSTICES BUFORD, ELLIS and DAVIS. JUS-

TICES TERRELL and BROWN dissented, and filed separate opinions in support thereof.

Upon a further rehearing of this case the Court is now equally divided in opinion as to whether the law of the case should be that stated in the opinion of MR. JUSTICE WHITFIELD, adopted by a majority of this Court, on July 9, 1932, or that stated in the dissenting opinion of MR. JUSTICE TERRELL at that time filed.

The result of the present situation is, that the former judgment of the Supreme Court, heretofore entered on this appeal on July 9, 1932, pursuant to the opinion of MR. JUSTICE WHITFIELD, should be ordered to stand unaltered on second rehearing, in accordance with the principles stated in the case of Florida Motor Lines, Inc. v. Hill, — Fla. —, 143 Sou. Rep. 261, 262, where a like situation prevailed.

Judgment of Supreme Court entered on July 9, 1932, adhered to.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.