WHITE, Judge.
Appellants Walter E. Travers and wife were defendants in a mortgage foreclosure suit which they contested on grounds that the plaintiffs, appellees here, had willfully exacted usurious charges and had otherwise estopped themselves from foreclosing the mortgage in question. The chancellor ruled for the plaintiffs and the cause is before us on appeal from the final decree of foreclosure.
On February 17, 1958 the parties entered into a contract by which the plaintiffs agreed to sell the defendants 40 acres of land in Martin County, Florida, for $25,-000.00. The transaction was closed on April 28, 1958 and the property was deeded to the defendants subject to an existing mortgage *808 which the defendants assumed and agreed to pay as part of the purchase price. The defendants executed and delivered to the plaintiffs their note and mortgage securing •.the $15,000.00 balance of the purchase price payable in three annual installments of $5,-€00.00 with interest at 5% per annum until maturity.
The defendants failed to pay the $2,733.00 balance of the assumed first mortgage when due on February 9, 1959, and the holders called upon the plaintiffs for payment. The defendants, however, made good the default. The subject of the present litigation is the $15,000.00 purchase money mortgage on which the first $5,000.00 installment with interest became due on April 28, 1959. Approximately a month thereafter the defendants delivered to the plaintiffs their check for $5,788.33 in payment of principal and interest to date. The check was returned to the plaintiffs marked ‘‘insufficient funds.” Several days later, on June 1, 1959, the plaintiffs’ attorney notified the defendants that the plaintiffs had elected to declare the entire principal of the mortgage indebtedness due and payable plus interest from April 28, 1958.
The defendant mortgagors apparently continued to be short of funds. They offered to sell the plaintiffs two waterfront lots, purportedly at a discount, to obtain the means of paying the past due installment. The offer was refused. Through an agent the defendants then submitted to one of the plaintiffs, who was then in the area, the offer of one lot for an extension of one year. This offer also was refused. On the latter occasion it appears that the local plaintiff, after communicating with the other plaintiff out of the state, suggested that the defendants might “come up with something better.”
On June 30, 1959, a little over a month after the expiration of the agreed thirty day period of grace, the plaintiffs extended the installment payments for one year. They received from the defendants two lots, one to each plaintiff, for which they paid the equivalent of $2,450.00 by way of release on the lots and credits to the defendants’ account. The true value of the lots was not clearly shown. There was some testimony on behalf of the defendants indicating a net value of $2,700.00 per lot, after discounting $300.00 commission under an exclusive sales agreement, which would make the net value of both lots $5,400.00. The plaintiffs submitted that the value of the lots was fixed by the actual consideration. There was no documentary evidence of recent sales of comparable lots and the evaluation by the defendants was disputed by the plaintiffs as far more than the lots were worth.
The defendants defaulted on the first payment under the extension agreement which was due on April 28, 1960. Thereafter on June 1, 1960, just prior to the filing of the foreclosure complaint, the plaintiff Tilton went to the tax collector’s office to see whether the taxes had been paid and, if not, to pay them. There coincidently he encountered the defendant Travers who paid the delinquent taxes as apparently he was there to do. The parties conversed briefly, but the subject of foreclosure was not mentioned. On June 2, 1960 the complaint was filed.
Of the two principal questions on appeal, viz., estoppel and usury, we shall consider first whether the chancellor erred in not finding that the plaintiffs had wrongfully accelerated the mortgage and estopped themselves from prosecuting the foreclosure. It is contended on behalf of the defendants that the plaintiffs misled them to their detriment by permitting them to pay the taxes when foreclosure was imminent; that the defendants were led to believe that they had additional time with respect to the major obligation and were about to explore other avenues which might have enabled them to make good their default had not the plaintiffs’ suit intervened.
It would serve no good purpose to expound the legal definitions or to cite and reconcile numerous decisions on the subject of estoppel. While the doctrine remains *809 constant, the case results vary because each decision rests upon the facts and circumstances of the particular case. It is generally recognized that the trial court, in considering questions of estoppel in pais,.is in a specially advantageous position. If, therefore, it is found and adjudged that the conduct complained of was not intended nor reasonably calculated to mislead to his detriment the party asserting an estoppel, such determination at the trial level will not be reversed on appeal unless manifestly erroneous. 19 Am.Jur. Estoppel § 204.
It appears in the instant case that the defendants were continually delinquent while the plaintiffs were constantly expressing their desire for their money, and only their money, inasmuch as they were “property poor.” The defendants repeatedly pressed for deferments and delays contrary to the wishes of the plaintiffs. The defendant Walter Travers stresses the point that when he was in the tax collector’s office on June 1, I960 the plaintiff told him that he was there to pay the taxes if the defendants did not. Assuming that Tilton could, with propriety, have informed Travers of the previous instructions to plaintiffs’ attorney to begin foreclosure, his failure to do so was not sufficient to raise an estoppel against foreclosure based on the major delinquency.
In paying the taxes on what was still their own property, the defendants were doing what they had obligated themselves to do and this relatively small item would necessarily be taken into account on any subsequent settlement- or redemption by the defendants. Instead of presuming on further forebearance, the defendants might reasonably have inferred that Tilton’s appearance at the tax office indicated that the plaintiffs had no great faith in the defendants’ ability to meet their obligations and that plaintiffs were simply taking available measures to protect their interests. There appears no satisfactory basis for holding contrary to the chancellor’s conclusion that the plaintiffs were not estopped to foreclose the mortgage in question.
The remaining and more serious contention on appeal is that the plaintiffs, by accepting the two lots in conjunction with the extension of the mortgage, willfully exacted usurious charges calling for a forfeiture of part or all of the mortgage indebtedness under Florida Statutes, Chapter 687, F.S.A. Section 687.03, F.S.A. provides that when a creditor makes a charge, directly or indirectly, whereby the debtor is obligated to pay á sum of money greater than the principal sum received plus interest at 10% it is usurious. Section 687.04 provides that whoever willfiitty violates the provisions of preceding Section 687.03 shall forfeit to the party from whom such usurious interest has been exacted double the amount of the interest so exacted.
Willfulness being an essential component of usury, the chancellor in the present case was confronted with the problem of ascertaining the plaintiffs’ subjective state of mind in relation to the transactions between the parties. He found, in effect, that the defendants had failed to establish the necessary element of willfulness by the requisite clear and satisfactory evidence. See Shaffran v. Holness, Fla.App.19S8, 102.So. 2d 35, 39.
In Shaffran v. Holness, just cited, this court said:
“In Jones v. Hammock, 131 Fla. 321, 179 So. 674, 675, it was said, This court has held that one of the requisites of a usurious transaction is that there must exist a corrupt intent to take more than the legal rate for the use of money loaned (Clark v. Grey, 101 Fla. 1058, 132 So. 832), and that usury is largely a matter of intent and is not fully determined by the fact of whether the lender actually gets more than the law permits, but whether there was a purpose in his mind to get more than legal interest for the use of his money (Benson v. First Trust & Savings Bank, 105 Fla. 135, 134 So. 493, 142 So. 887, 145 So. 182). Also to work a forfeiture under the statute the principal must knowingly *810 or wilfully charge or accept more than the amount of interest prohibited. Chandler v. Kendrick, 108 Fla. 450, 146 So. 551, 552.’ Argintar v. Lydell, 132 Fla. 45, 180 So. 346.”
The rule of the foregoing decision is in line with the quoted statute and has not been abrogated by any subsequent statute or decision, including Shorr v. Skafte, Fla. 1956, 90 So.2d 604, 607, a case heavily relied upon by the defendants. In the latter case there were grossly excessive charges of more than 25% in the inception of the loan. The lender pleaded ignorance of the usury laws but offered no evidence by way of explanation. The court held that the facts were indicative of a willful and corrupt intent within the meaning of the statute. The court recognized that the important factor is the willfulness of the lender and that the “matter of willfulness is not absolutely closed by the bare statement of the lender that he was unconscious of wrongdoing.” The case essentially is authority for the proposition that the lender’s actions are indicia of his intentions, and the court properly held that there were impelling indications of the lender’s willful intent to exact usurious interest despite his protestations of innocence.
The defendants here emphasize plaintiffs’ refusal to accept one lot for an extension and their suggestion that the defendants might come up with something better. They submit that this is proof of plaintiffs’ willful intent to obtain more compensation for their forbearance than is sanctioned by law. Ralph Hartman, Jr., who negotiated the extension agreement, testified that when he approached plaintiff Tilton to see if plaintiff Stokes had been contacted in regard to the proposed extension, Tilton stated that all the plaintiffs wanted was their money and that they did not want property inasmuch as they were “property poor.”
The parties differed in their computations of the amount of “interest” received, if the lots were considered liquid assets according to monetary value. It is apparent that it would have taken considerable effort to reduce the value of the lots to their equivalent in terms of interest, and this also could have influenced the chancellor in reaching his conclusion that there was no willful exaction of excessive interest on the part of the plaintiffs. Dezell v. King, Florida 1956, 91 So.2d 624.
Perceiving no error we conclude that the decree appealed should be upheld. The fees allowed attorneys for the plaintiffs in the trial proceedings are within the recognized minimum fee schedules and are reasonable. An additional fee of $500.00 is allowed plaintiffs’ attorney for services on appeal pursuant to his petition. We note that the defendants agreed it would be in order, upon affirmance, to award a reasonable fee for such services on appeal.
Affirmed.
SHANNON, C. J., and ALLEN, J., concur.