148 So.2d 257 (1962)
HOME CREDIT COMPANY, a corporation, Petitioner,
v.
E.B. BROWN, as Administrator of the Estate of Raymond Green, deceased, et al., Respondent.
No. 31778.
Supreme Court of Florida.
December 21, 1962.
Rehearing Denied January 22, 1963.
Harold C. Farnsworth of Hall, Farnsworth & Rousseau, Tampa, for petitioner.
L.D. Martin, St. Petersburg, for E.B. Brown, as Adm'r of Estate of Raymond Green, deceased, respondent.
*258 DREW, Justice.
The opinion of the district court in this cause[1] fully and fairly reflects the factual circumstances upon which its determination of usury under F.S. § 687.07, F.S.A., was based. Briefly, the litigation involved two notes dated September 22, 1959, in total face amount of $8,750, payable in 120 monthly installments over a ten-year period, with provision that upon default in any installment of the notes "the entire amount unpaid shall be due and payable forthwith at the election of the holder." Default occurred after one monthly payment and suit was instituted in June, 1960. Finding that plaintiff, petitioner here, was not a holder in due course, and that the total amount actually advanced the maker upon these notes was $5,000, the district court reversed a decree granting recovery of the principal sum and held that "the acceleration clauses rendered the instant transaction criminally usurious at its inception," or in the alternative it became so under Ayvas v. Green, Fla. 1950, 57 So.2d 30, "when Home Credit sought to recover the full face value of the two notes."
Upon petition for review in this court by certiorari, the writ has issued on the ground of alleged conflict between this decision and rulings on the same point of law in Benson v. First Trust & Savings Bank, 105 Fla. 135, 142 So. 887, modifying 134 So. 493, and in Ayvas v. Green, supra. While the Benson opinions are of doubtful authority,[2] we conclude that both the Benson and Ayvas cases decided, contrary to the decision here, that the presence of an acceleration clause coupled with reserved interest will not render an obligation usurious at its inception, independent of the actual exercise and consequent effect of such option. In both earlier cases only civil usury was found in a situation where, under the rule stated by the district court, the transactions would have been criminally usurious in the inception. Jurisdiction in this court accordingly vests under the constitutional language,[3] and the merits of the instant decision will be evaluated hereinafter upon a more complete analysis of the methods of computation actually used in the earlier cases.
Our examination of the record and facts recited in the opinion of the district court fully sustains its conclusions with respect to the petitioners position and participation in the transaction from the outset rather than as a third party holder in due course, and we conclude also that the nature of the transaction between the parties was properly defined as a loan obligation subject to the usury statutes.
The case of Shorr v. Shafte, Fla. 1956, 90 So.2d 604, was cited below in support of the conclusion that the acceleration *259 clauses rendered the instant transaction criminally usurious at its inception. That case adjudicates the point that wilfulness may, in the absence of contrary evidence, be inherent in the act of contracting for an excessive return. There was presented no problem of intervening contingency without which the excess could not become payable.[4] We recognize that if the issue were one of first impression it might logically be argued that a provision for a rate of return which might even upon a contingency be excessive would render an obligation usurious in the inception, and a reservation of interest would then always result in usury if under any circumstances the date of maturity could be accelerated so as to convert the obligation into a demand note. Perhaps even more reasonably it might be said that such an arrangement is not usurious at the outset and will not become so merely because a default precipitates liability under the contract for the excessive sums. Such, however, is not the effect of the earlier decisions, where the problem of usury resulting from a bonus or reserved interest is apparently affected by a contingent early maturity "if the note and mortgage contained an acceleration clause of which the lender takes advantage."[5] This treatment of the acceleration problem in our cases thus represents an anomalous but long standing disregard of the general rule that the usurious character of a contract must be determined or determinable at its inception.[6]
The alternative holding in this case, as already indicated, was that the notes became criminally usurious "when Home Credit sought to recover the full face value of the two notes." (Emphasis supplied.) Petitioner contends that this conflicts with the pronouncement in our cases "that the usurious character of a contract must be determined as of the date of its inception."[7] The latter principle has been applied to require that a determination of usury be based upon a consideration of the total benefits or rights which could accrue to the lender under a literal construction of the terms of a contract fixed at its inception, independent of subsequent attempts to purge the contract of its usurious character. In its fundamental sense, however, the quoted principle contemplates also that a determination of usury shall be based upon a consideration of what amount the note on its face authorizes the obligee to demand, rather than upon which amount he actually demands or seeks to recover. We conclude that to attribute a decisive effect to the actual scope of an obligee's demands, as opposed to the amount which the contract purports to precipitate to maturity upon default and demand, would indeed collide with this guiding principle. The language of the Ayvas opinion does ascribe significance to the absence of excessive demands by the complainant, but the point cannot, we think, be given a controlling effect.
As above noted, the second alternative holding upon the pertinent point of law in this case was that the lender's institution of suit seeking to recover the face value of the notes operated to make the contract criminally usurious. Upon this critical point the Court thus decided that Home Credit's action constituted an exercise of the acceleration option so as to precipitate the obligation to maturity and require proration of the reserved interest over the period from the date of the original contract to the date when Home Credit instituted suit or "sought to recover" this entire face amount, resulting in an interest rate in excess of 25%.
This method of computation clearly differs from that used in the Benson case, supra, where, in litigation also involving the effect of exercise of an option of acceleration *260 upon the rate of interest attributable to a reserved sum, this Court found the date of the decree entered in such litigation to be the maturity date for purposes of interest rate computation. While such an obligation might logically be deemed mature upon demand by the lender at any time after default,[8] we find no persuasive reason for abandoning the actual rule of the Benson case by which reserved interest is prorated over the period of time for which the lender has elected to allow the obligation to run, to the date when his right to payment is legally determined by court decree whenever suit has become necessary.
In any event, we think computations under the usury law must be based on a determination of the scope of acceleration rights which a note or contract purports to give a lender or holder and not upon the sums actually claimed by him. This follows necessarily from the principle that the vice of usury is one which inheres in the parties' agreement itself. When a note upon its face vests in the holder, as in the instant case and in Ayvas, supra, an option upon default to accelerate maturity of the total obligation, including unearned interest,[9] then the results of its exercise must be evaluated under the literal contract terms whether or not the complaint in fact seeks recovery of all such sums.
We hold, in sum, that the presence of the acceleration option contingent on default did not alone warrant a finding of usury in the inception of the transaction here involved, and that in testing the results of its exercise the reserved interest must be calculated as payment for the use of the actual outstanding principal sum until the acceleration option became effective by entry of a decree thereon on May 11, 1961. Upon application of this rule to the facts at bar, set forth in the opinion below, we conclude that the resulting rate of interest nevertheless exceeded 25% and the ultimate disposition of the cause in the district court by forfeiture of principal and interest under Sec. 687.07, supra, was proper. Its judgment is for this reason proper, and the writ of certiorari heretofore issued in this cause should accordingly be discharged.
It is so ordered.
ROBERTS, C.J., and TERRELL, THORNAL, O'CONNELL and HOBSON (Ret.), JJ., concur.
NOTES
[1] Brown v. Home Credit Co., Fla.App., 137 So.2d 887.
[2] The cause was ultimately disposed of by a divided court, 105 Fla. 135, 145 So. 182, resulting in adherence to the judgment recorded at 142 So. 887, but leaving uncertain the extent to which the prior conflicting opinions in the cause represented the opinion of the Court. Later opinions have quoted the rule of the first Benson opinion, 134 So. 493, that in the case of reserved interest for an agreed term

"* * * the legal consequences of such an arrangement must be tested by the results contemplated by the parties on the assumption that both lender and borrower will fully carry out their agreement rather than the special results which may follow, but are not necessarily certain to ensue, when the borrower breaches a covenant which accelerates the maturity of the principal at the option of the lender."
Smith v. Midcoast Investment Co., 127 Fla. 455, 173 So. 348, couples this reference with a statement of the qualifying rule actually applied in the second Benson opinion to hold that
"* * * if the note and mortgage contained an acceleration clause of which the lender takes advantage, then the bonus or excess will be pro rated only over the period of time for which the lender has elected to allow the obligatoin to run." (Emphasis supplied.)
[3] Art. V, Sec. 4, Fla. Const., F.S.A.
[4] See 56 Am.Jur. 351.
[5] Smith v. Midcoast, note 2, supra.
[6] See Maxwell v. Jacksonville Loan & Improv. Co., 45 Fla. 425, 34 So. 255, for the origin of the problem of default penalties under our statute, regarded generally as outside the scope of usury calculations. Anno. 84 A.L.R. 1283.
[7] Carter v. Leon Loan and Finance Co., 108 Fla. 567, 146 So. 664.
[8] See Sonz v. Eisenstat, Fla. 1953, 70 So.2d 373, where the Benson rule was apparently so interpreted and applied.
[9] Cf. Graham v. Fitts, 53 Fla. 1046, 43 So. 512. 33 Fla.Jur., Usury Secs. 28, 29.